OPINION
{¶ 1} This is an appeal from the Municipal Court of New Philadelphia, Ohio, wherein Appellant was found guilty by a jury of driving under the influence of alcohol and with a prohibited level of alcohol.
 {¶ 2} He was also found guilty by the judge of failing to control his vehicle.
 STATEMENT OF THE FACTS AND CASE {¶ 3} Appellant was involved in a single vehicle accident on November 20, 2004.
 {¶ 4} Three field sobriety tests were performed.
 {¶ 5} One clue was noted on the one leg stand and three on the walk and turn.
 {¶ 6} The results of the HGN test were suppressed.
 {¶ 7} A voluntary chemical breath test indicated 0.114 grams of alcohol per 210 liters of breath.
 {¶ 8} Two Assignments of Error are raised:
 ASSIGNMENTS OF ERROR {¶ 9} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS AS A VIOLATION OF HIS RIGHT TO A SPEEDY TRIAL.
 {¶ 10} "II. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF APPELLANT'S BREATH-ALCOHOL TEST FROM A B.A.C. DATAMASTER MACHINE.
 {¶ 11} "III. THE TRIAL COURT ERRED IN NOT SUPPRESSING APPELLANT'S POST-MIRANDA SILENCE, AND FURTHER ERRED IN ALLOWING THE POST-MIRANDA SILENCE OF APPELLANT ADMITTED AT TRIAL."
 I. {¶ 12} In his first Assignment of Error, Appellant argues that his constitutional right to a speedy trial was violated.
 {¶ 13} Revised Code § 2945.71 provides:
 {¶ 14} Time within which hearing or trial must be held:
 {¶ 15} "(B) Subject to division (D) of this section, a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial as follows:
 {¶ 16} "* * *"
 {¶ 17} "(2) Within ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days."
 {¶ 18} Initially, we note that a speedy trial claim involves a mixed question of law and fact. State v. Larkin, Richland App. No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent credible evidence. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id.
 {¶ 19} "The right to a speedy trial is guaranteed to all state criminal defendants by the Sixth and Fourteenth Amendments to the United States Constitution . . . and by Section 10, Article I of the Ohio Constitution." State v. Riley,162 Ohio App.3d 730, 735, 834 N.E.2d 887, 2005-Ohio-4337. The Ohio General Assembly enacted the provisions in R.C. 2945.71 et seq. in an effort to prescribe "reasonable speedy trial periods consistent with these constitutional provisions." Riley at 735,834 N.E.2d 887, quoting State v. O'Brien (1987), 34 Ohio St.3d 7, 8,516 N.E.2d 218.
 {¶ 20} When reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. In Brecksville v. Cook (1996),75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709, the Court reiterated its prior admonition "to strictly construe speedy trial statutes against the state."
 {¶ 21} The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. § 2945.72, which provides, in pertinent part:
 {¶ 22} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 23} "(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;
 {¶ 24} "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
 {¶ 25} "(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
 {¶ 26} "(D) Any period of delay occasioned by the neglect or improper act of the accused;
 {¶ 27} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 28} "(F) Any period of delay necessitated by a removal or change of venue pursuant to law;
 {¶ 29} "(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;
 {¶ 30} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;
 {¶ 31} "(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.
 {¶ 32} "When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71." Statev. DePue (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745.
 {¶ 33} An examination of the docket indicates that the arrest was made on November 29, 2004.
 {¶ 34} Appellant filed a motion to continue on such date with the approval Entry filed on December 2, 2004. Also on December 2, 2004, Appellant filed a motion to preserve evidence with a discovery demand. Such was approved December 3, 2004.
 {¶ 35} Discovery was provided December 7, 2004, with the State's discovery demand. Additional discovery forwarded on December 9, 2004.
 {¶ 36} On December 21, 2004, Appellant was granted 14 days for further motions.
 {¶ 37} On December 22, 2004, Appellant filed a suppression motion and a Motion to Strike S.B. 163 and R.C. § 4511.19 and reinstate the strict compliances standard of State v. Homan
(2000), 89 Ohio St.3d 421.
 {¶ 38} An entry of January 6, 2005, continued the suppression hearing to January 27, 2005.
 {¶ 39} On January 11, 2005, Appellant, due to trial conflict filed a motion to continue the January 27, 2005, hearing. Such was granted on January 20, 2005, with the new hearing date set for March 26, 2005.
 {¶ 40} On February 14, 2005, Appellee moved to continue due to the unavailability of a witness.
 {¶ 41} The entry of February 25, 2005, reset the suppression hearing to May 18, 2005.
 {¶ 42} On May 23, 2005, Appellant's motion dated May 19, 2005, was filed.
 {¶ 43} An entry on the suppression motion occurred on June 21, 2005.
 {¶ 44} Also, an entry notifying Appellant to arrange for a transcript was docketed June 27, 2005.
 {¶ 45} On four of Appellant's motions his counsel stated:
 {¶ 46} "Defendant, by and through counsel, knowingly and voluntarily extends the time limitations to be brought to trial as prescribed in Section 2945.71 O.R.C. until the next Court date set herein."
 {¶ 47} On August 15, 2005, Appellant filed a motion as to the lack of a speedy trial along with proposed jury instructions.
 {¶ 48} The entry denying such motion was signed on August 19, 2005, following the trial of August 15, 2005.
 {¶ 49} We find the various motions of Appellant together with the time waiver and Appellee's justifiable extension clearly tolled the excess elapsed time over the applicable statutory speedy trial requirement.
 {¶ 50} Therefore, the First Assignment of Error is not well taken.
 II. {¶ 51} The Second Assignment of Error relates to the denial of Appellant's Motion to Suppress the results of the B.A.C. Datamaster breath test.
 {¶ 52} This Assignment asserts violations of and failure at the suppression hearing to establish compliance with Administrative Code §§ 3701-53-01(A), (A)(1), (B), 3701-53-02(A), (A)(1), (B), (C), 3701-53-04(A), (A)(1), (B), and Revised Code §4511.19(D).
 {¶ 53} Such Administrative Code Sections state:
 {¶ 54} Administrative Code § 3701-53-1(A), (A)(1)(2)(3) and (B):
 {¶ 55} "(A) Tests to determine the concentration of alcohol may be applied to blood, breath, urine, or other bodily substances. Results shall be expressed as equivalent to:
 {¶ 56} "(1) Grams by weight of alcohol per one hundred milliliters or whole blood, blood serum or plasma (grams per cent by weight);
 {¶ 57} "(2) Grams by weight of alcohol per two hundred ten liters of deep lung breath;
 {¶ 58} "(3) Grams by weight of alcohol per one hundred milliliters of urine (grams per cent by weight).
 {¶ 59} "The results of the tests shall be retained for not less than three years.
 {¶ 60} "(B) At least one copy of the written procedure manual required by paragraph (D) of rule 3701-53-06 of the Administrative Code for performing blood, urine, or other bodily substance tests shall be on file in the area where the analytical tests are performed."
 {¶ 61} "In the case of breath tests using an approved evidential breath testing instrument listed in paragraphs (A) and (B) of rule 3701-53-02 of the Administrative Code, the operational manual provided by the instrument's manufacturer shall be on file in the area where the breath tests are performed."
 {¶ 62} Administrative Code § 3701-53-02(A), (A)(1), (B), (C):
 {¶ 63} "(A) The instruments listed in this paragraph are approved as evidential breath testing instruments for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19, 1547.11,2903.06, 2903.08, 4506.15, and/or 4506.17 of the Revised Code, or any other statute or local ordinance equivalent to those in this paragraph prescribing a defined or prohibited breath-alcohol concentration. The approved evidential breath testing instruments are:
 {¶ 64} "(1) BAC DataMaster, BAC DataMaster cdm;
 {¶ 65} "* * *"
 {¶ 66} "(B) The instruments listed in this paragraph are approved as additional evidential breath testing instruments for use in determining whether a person's breath contains a concentration of alcohol prohibited or defined by sections1547.11 and/or 1547.111 of the Revised Code, or any other statute or local ordinance equivalent to those defined by sections1547.11 and/or 1547.111 of the Revised Code prescribing a defined or prohibited breath alcohol concentration. The approved evidential breath testing instruments are:
 {¶ 67} "* * *"
 {¶ 68} "(C) Breath samples of deep lung (alveolar) air shall be analyzed for purposes of determining whether a person has a prohibited breath alcohol concentration with instruments approved under paragraphs (A) and (B) of this rule. Breath samples shall be analyzed according to the operational checklist for the instrument being used and checklist forms recording the results of subject tests shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code. The results shall be recorded on forms prescribed by the director of health."
 {¶ 69} Administrative Code § 3701-53-04 (A), (A)(1), (2), (B), (C), (D) and (E) states:
 {¶ 70} "(A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
 {¶ 71} "(1) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced.
 {¶ 72} "(2) An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health. An instrument check result is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution. An instrument check result which is outside the range specified in this paragraph shall be confirmed by the senior operator using another bottle of approved instrument check solution. If this instrument check result is also out of range, the instrument shall not be used until the instrument is serviced.
 {¶ 73} "(B) An instrument check shall be made in accordance with paragraph (A) of this rule when a new evidential breath testing instrument is placed in service or when the instrument is returned after service or repairs, before the instrument is used to test subjects.
 {¶ 74} "(C) An instrument check solution shall not be used more than three months after its date of first use, or after the manufacturer's expiration date (one year after manufacture) whichever comes first. After first use, instrument check solutions shall be kept under refrigeration when to being used. The instrument check solution container shall be retained for reference until the instrument check solution is discarded.
 {¶ 75} "(D) Each testing day, the analytical techniques used in rule 3701-53-03 of the Administrative Code shall be checked for proper calibration under the general direction of the designated laboratory director. General direction does not mean that the designated laboratory director must be physically present during the performance of the calibration check.
 {¶ 76} "(E) Results of instrument checks, calibration checks and records of service and repairs shall be retained in accordance with paragraph (A) of rule 3701-530-1 Administrative Code."
 {¶ 77} Revised Code § 4511.19(D) provides:
 {¶ 78} "(D)(1) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense, the court may admit evidence on the concentration of alcohol, drugs of abuse, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation.
 {¶ 79} "When a person submits to a blood test at the request of a law enforcement officer under section 4511.191 of the Revised Code, only a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist shall withdraw blood for the purpose of determining the alcohol, drug, or alcohol and drug content of the whole blood, blood serum, or blood plasma. This limitation does not apply to the taking of breath or urine specimens. A person authorized to withdraw blood under this division may refuse to withdraw blood under this division, if in that person's opinion, the physical welfare of the person would be endangered by the withdrawing of blood.
 {¶ 80} "The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code.
 {¶ 81} "(2) In a criminal prosecution or juvenile court proceeding for a violation of division (A) of this section or for an equivalent offense, if there was at the time the bodily substance was withdrawn a concentration of less than the applicable concentration of alcohol specified in divisions (A) (1)(b), (c), (d), and (e) of this section, that fact may be considered with other competent evidence in determining the guilt or innocence of the defendant. This division does not limit or affect a criminal prosecution or juvenile court proceeding for a violation of division (B) of this section or for an equivalent offense that is substantially equivalent to that division.
 {¶ 82} "(3) Upon the request of the person who was tested, the results of the chemical test shall be made available to the person or the person's attorney, immediately upon the completion of the chemical test analysis.
 {¶ 83} "The person tested may have a physician, a registered nurse, or a qualified technician, chemist, or phlebotomist of the person's own choosing administer a chemical test or tests, at the person's expense, in addition to any administered at the request of a law enforcement officer. The form to be read to the person to be tested, as required under section 4511.192 of the Revised Code, shall state that the person may have an independent test performed at the person's expense. The failure or inability to obtain an additional chemical test by a person shall not preclude the admission of evidence relating to the chemical test or tests taken at the request of a law enforcement officer.
 {¶ 84} "(4)(a) As used in divisions (D)(4)(b) and (c) of this section, "national highway traffic safety administration" means the national highway traffic safety administration established as an administration of the United States department of transportation under 96 Stat. 2415 (1983), 49 U.S.C.A. 105.
 {¶ 85} "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 86} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 87} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 88} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.
 {¶ 89} "(c) Division (D)(4)(b) of this section does not limit or preclude a court, in its determination of whether the arrest of a person was supported by probable cause or its determination of any other matter in a criminal prosecution or juvenile court proceeding of a type described in that division, from considering evidence or testimony that is not otherwise disallowed by division (D)(4)(b) of this section."
 {¶ 90} An appellate court's review of a motion to suppress involves mixed questions of law and fact. State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583. We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. See Burnside, 100 Ohio St.3d 152, 797, N.E.2d 71. However, with respect to the trial court's conclusions of law, we must apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard."
 {¶ 91} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger
(1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See:State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger
(1993), 86 Ohio App.3d 592.
 {¶ 92} Before the results of a breathalyzer test may be admitted into evidence, the State must show that (1) the instrument was in proper working order; (2) its operator had the proper qualifications to conduct the test; and (3) the test was conducted in substantial compliance with Ohio Department of Health regulations. See: Cincinnati v. Sand (1975),43 Ohio St.2d 79; Newark v. Lucas (1988), 40 Ohio St.3d 100. When a motion to suppress is predicated on non-compliance with Department of Health test regulations, the burden is on the State to prove compliance with said regulations. See: State v. Crowderand Wright (Nov. 30, 1995), Morgan App. Nos. CA-95-14 and CA-951-5, unreported.
 {¶ 93} Appellant argues that the State failed to establish the location of the manufacturer's operations manual in the vicinity of the B.A.C. machine, the retention of the testing record for the three year period, the two hour testing requirement being exceeded and the proof did not show that alveolar air was tested.
 {¶ 94} The Appellee responds that the suppression motion lacked the specificity required by Criminal Rule 47 so that it was not put on notice of these issues and that substantial compliance with the regulations was established.
 {¶ 95} We find the motion of Appellant complied with such criminal rule and in fact, Appellee acknowledged such on page 3 of the transcript stating that the suppression motion was very specific.
 {¶ 96} The testimony on these various points came from Lieutenant Eric Escola, post commander of the State Highway Patrol.
 {¶ 97} "And with that BAC Data Master an instructor's or manufacturer's manual comes with that, correct?
 {¶ 98} "Correct.
 {¶ 99} "And that is kept at your post, correct?
 {¶ 100} Yes, ma'am.
 {¶ 101} "In relation to that particular instrument?
 {¶ 102} "Correct." (Tr. at p. 102).
 {¶ 103} "* * *"
 {¶ 104} "Okay, when we calibrate the device we first follow all the instructions on here and each step is checked off with an, with an X or a checkmark after each step is performed. Once we get down to the point where you check it with the, you check it with the internal or the internal standard check with the radio interference we activate mic, our portable mic and it aborts the test and by doing that, it did that in this, in this case here at 7:42 and then at 7:45 then we got the test, you know, because we run it over again, after it aborts the test we start the sequence over as we continue through the checklist and then we test the solution. That way we know the RFI is working within the instrument because it activated and aborted like it was supposed to do and then we went along with the bigger sequence and tested the simulator solution, and there's a printout of the test of the simulator solution here also for .096 at 07:45 hours." (Tr. at p. 107).
 {¶ 105} "* * *"
 {¶ 106} "And do you keep the results of all your instrument checks and calibration checks and service and repairs at the post?
 {¶ 107} "Correct, we do.
 {¶ 108} "And for what time length do you keep those, when are you able to discard them?
 {¶ 109} "We keep the records for the BAC verifier for as long as we have the device." (Tr. at p. 108).
 {¶ 110} As to the time factors, Margaret Dessecker, telecommunicator, testified:
 {¶ 111} "Can you tell me what time that call came in?
 {¶ 112} "Received at 2317, that would be 11:17 pm.
 {¶ 113} "Thank you, and what was that call regarding?
 {¶ 114} "That was regarding an auto accident on I-77." (Tr. at p. 9).
 {¶ 115} "* * *"
 {¶ 116} "Okay, and is there an end time to your call on that record?
 {¶ 117} "I'm showing 23:23 is when I referred it to the state highway patrol.
 {¶ 118} "Okay, and that's 11:23, right?
 {¶ 119} "Correct." (Tr. at p. 11).
 {¶ 120} The evidence also established from Michelle McKinney, an eye witness, that the call to Ms. Dessecker emanated from her immediately after the accident.
 {¶ 121} Trooper Beach established the test start at 1:08 a.m. (Tr. at p. 56).
 {¶ 122} We find that the evidence establishes the manual being located at the Post, the retention of the records "for so long as we have the device (B.A.C.) that alveolar air was tested" and that the test began within the required two hour period.
 {¶ 123} The question then remains as to whether such proof constitutes substantial compliance with the regulations.
 {¶ 124} The regulation as to the manual states that it shall be on file in the area where the analytical tests are performed. It does not state that be in the vicinity of the machine.
 {¶ 125} While it is correct that the specific three year retention was not stated but only that the records are kept as long as they had the device, we find that the retention for three years is unrelated to the compliance with the testing and the specific time omission, at best, a de minimus aberration.
 {¶ 126} Therefore, substantial compliance with the regulations was established by the State, thereby triggering the presumption of admissibility, thereby shifting the burden to Appellant to rebut such presumption by a showing of prejudice.State v. Burnside, supra.
 {¶ 127} We also disagree with Appellant's conclusions as to the applicability of our ruling in State v. Schlegel (2004), 5th Dist. App. No. 2003CA00382, as such case dealt with the failure to follow mandatory regulations, and the facts of testing were significantly different from here.
 {¶ 128} We therefore reject the Second Assignment of Error.
 III. {¶ 129} The Third Assignment concerns asserted error as to admission of the lack of an explanation to the arresting officer as to the cause of Appellant's accident.
 {¶ 130} The testimony at the suppression hearing and comments by counsel were:
 {¶ 131} "Mr. Arnold: Anything about the amount he had to drink, anything about the wreck, nothing that you recall?
 {¶ 132} "Trooper Beach: I know he refused to give a written statement on the crash report. Whether he said something on the tape that's, I don't know if I recorded the trip back to the post or not. I could not testify at the post or when there's no tape whether he made any statement incriminating himself, no." (Tr. at p. 66).
 {¶ 133} "* * *"
 {¶ 134} "Trooper Beach: Yes, I, I read the Miranda out at the scene and then I believe I offered him a written, to give a written statement at the patrol post.
 {¶ 135} "Mr. Arnold: That would be the statement, the refusal to exercise his constitutional right, your Honor, that would be I guess the limited scope of the paragraph counsel's asking for is that that be suppressed, the fact that my client exercised his right to remain silent and that that not be presented to the jury.
 {¶ 136} "The Court: Okay, any response to that?
 {¶ 137} "Ms. Weimer: I would not have done that anyway, your Honor." (Tr. at p. 67).
 {¶ 138} From the transcript during direct examination by Attorney Range of Trooper Roy R. Beach during the jury trial the following appears:
 {¶ 139} "Did he tell you how the accident happened?
 {¶ 140} "No.
 {¶ 141} "Did you ask him to tell you how the accident happened?
 {¶ 142} "Yes, I did.
 {¶ 143} "Did he decline?
 {¶ 144} "Yes.
 {¶ 145} "Did he ever provide a written statement —
 {¶ 146} "Mr. Arnold: Objection, Your Honor.
 {¶ 147} "The Court: Basis?
 {¶ 148} "Mr. Arnold: Your Honor, anything that happens after he reads my client Miranda would be constitutional right not to —
 {¶ 149} "The Court: That's an issue for suppression. Overruled.
 {¶ 150} "I'm sorry, what was the question?
 {¶ 151} "Did Mr. Wetherill ever provide any written statement for you?
 {¶ 152} "No, he did not.
 {¶ 153} "Did you ask him to?
 {¶ 154} "Yes, I did.
 {¶ 155} "Did he give an explanation why he didn't do that?
 {¶ 156} "No, he just refused to give a statement." (Tr. at pp. 155-156).
 {¶ 157} As legal support of this Third Assignment, Appellant relies on Doyle v. State of Ohio (1976), 426 U.S. 610,Wainwright v. Greenfield (1986), 474 U.S. 284, State v. Leach
(2004), 102 Ohio St.3d 135 and this Court's opinion in State v.Shaffer (2004), 2003-CA-0108, 2004-Ohio-3717.
 {¶ 158} The United States Supreme Court in the Doyle case determined:
 {¶ 159} ". . . prosecutor's cross-examining defendants as to why they had not told the frame-up story on arrest violated due process and that cross-examination as to defendants' postarrest silence was not justified on grounds of necessity,"
 {¶ 160} This case involved post-arrest, post-Miranda
silence. (Miranda v. Arizona, (1966), 384 U.S. 436).
 {¶ 161} A similar result was reached by such in Wainwright:
 {¶ 162} ". . . the prosecutor, over defense counsel's objection, reviewed police officer testimony as to the occasions on which respondent had exercised his right to remain silent, and suggested that respondent's repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension that was inconsistent with his claim of insanity.
 {¶ 163} "* * *"
 {¶ 164} ". . . held that use of petitioner's postarrest, post-Miranda warnings silence as evidence of his sanity violated due process."
 {¶ 165} This case also involved admission of statements exercising Constitutional rights, post-arrest, post-Miranda
warnings, as evidence of substantive guilt.
 {¶ 166} The Leach case concerned both pre-Miranda and post-Miranda evidence of his silence.
 {¶ 167} In Leach, the Ohio Supreme Court thoroughly analyzed the distinctions drawn by the United States Supreme Court as to pre- and post-arrest and Miranda statements.
 {¶ 168} It cited Jenkins v. Anderson (1980), 447 U.S. 231, in concluding that the admission of pre-arrest, pre-Miranda
silence is not necessarily prohibited by the Fifth Amendment to the United States Constitution.
 {¶ 169} In Jenkins, the defendant had taken the stand and the pre-arrest silence was developed on impeachment not in the State's case on direct.
 {¶ 170} The court stated:
 {¶ 171} "(1) the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of prearrest silence to impeach a criminal defendant's credibility; impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial; (2) use of prearrest silence to impeach a defendant's credibility does not deny him the fundamental fairness guaranteed by the Fourteenth Amendment; but (3) a state court is not required to allow impeachment through the use of prearrest silence; each jurisdiction is free to formulate evidentiary rules defining the situations in which silence is viewed as more probative than prejudicial."
 {¶ 172} In Leach, supra, the Ohio Supreme Court was presented with an admission by the State "that it intended to lead the jury to one conclusion by using evidence of Leach's pre-arrest silence in its case-in-chief: that innocent people speak to police to clear up misunderstandings, while guilty people consult with their attorneys."
 {¶ 173} The Court in Leach held:
 {¶ 174} "Therefore, we hold that use of a defendant's pre-arrest silence as substantive evidence of guilt violates theFifth Amendment privilege against self-incrimination. Because the evidence of guilty was not overwhelming in this case, the admission of defendant's pre-arrest, pre-Miranda silence was clearly prejudicial."
 {¶ 175} This Court's decision in State v. Shaffer, Fifth Dist. App. No 2003-CA0-108, 2004-Ohio-3717, was also one where evidence was found lacking. In such case, the officer was instructed not to comment on the defendant's desire to speak to an attorney but stated that it was his opinion that Shaffer was guilty because of such.
 {¶ 176} This Court found such statement, with the lack of any other evidence, to be clearly prejudicial.
 {¶ 177} The case sub judice presents a different picture as to the other evidence in that Appellant was involved in a single car accident, he presented one clue on the one-leg stand test and three clues on the walk-and-turn test. His breath alcohol test registered 0.114 grams of alcohol per 210 liters of breath.
 {¶ 178} In State v. Williams (1983), 6 Ohio St.3d 281, syllabus paragraph six, the Ohio Supreme Court held that "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt."
 {¶ 179} The test for determining whether the admission of inflammatory or otherwise erroneous evidence is harmless and non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. State v. Davis (1975), 44 Ohio App.2d 335, 347. If there is substantial evidence, the conviction should be affirmed, but if there is not other substantial evidence, then the error is not harmless and a reversal is mandated. Id.
 {¶ 180} Upon review, we do not find that the admission of the lack of explanation by Appellant as to the cause of the accident to have affected the outcome of the trial as sufficient evidence of guilt was presented. In addition, the characterization of the silence on this point as being prejudicial is very speculative.
 {¶ 181} Therefore, the Third Assignment of Error is denied.
 {¶ 182} This cause is affirmed.
By: Boggins, J. Gwin, P.J. and Hoffman, J. concurs
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas Municipal Court is affirmed. Costs assessed to appellant.