THE STATE OF OHIO, APPELLANT, *v.* LEACH, APPELLEE.

[Cite as *State v. Leach,* 102 Ohio St.3d 135, 2004-Ohio-2147.]

(No. 2003–0053—Submitted November 4, 2003—Decided May 12, 2004.)

LUNDBERG STRATTON, J.

{¶ 1} Today we are asked to decide whether a defendant's pre-arrest silence may be used as substantive evidence of guilt in the state's case-in-chief and whether a defendant's post-arrest, post-*Miranda* assertion of his right to counsel may be used as substantive evidence of guilt in the state's case-in-chief. For all of the reasons expressed below, we hold that use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment, and we hold that the use of a defendant's post-arrest, post-*Miranda* invocation of his right to counsel as substantive evidence of guilt violates the Fourteenth Amendment. Accordingly, we affirm the judgment of the court of appeals.

{¶ 2} The facts in this case are as follows: In August 2001, Sarah Sheblessy asked Ashlee Decker, a 19–year–old friend of her daughter, to care for the family cats while the Sheblessys vacationed in North Carolina. Sheblessy also asked her friend, Thomas Leach, defendant-appellee, to periodically check on the home as well.

{¶ 3} It is disputed whether Decker and her 19–year–old friend, April Crosthwaite, had permission to stay overnight at the Sheblessy home. However, the two women were staying overnight when Leach entered the home. The events that took place inside the home were disputed, but ultimately, the two women called the police and accused Leach of what amounted to attempted rape and other crimes.

{¶ 4} During her opening statement, the prosecutor made the following remark concerning what had occurred after the women called the police: "She [Sheblessy] gives [the police] the number of the defendant, in order for them to call him. They do call, and they do contact him. He agrees to talk to them, makes an appointment, but then calls back and says he wants an attorney. The police, then, based on what they had at that point, go and arrest the defendant, and they question him."

{¶ 5} During the state's case-in-chief, Sergeant Corbett testified that Sheblessy had told him that Leach wanted to speak with him, and Sheblessy provided Leach's cell-phone number and his home address. Sergeant Corbett testified that he dialed the number and spoke with Leach. When the witness was asked about the content of that conversation, Sergeant Corbett testified: "I asked Thomas Leach, I told him that I had been made aware that he wanted to talk to the police about what had occurred at the house that night, and I made arrangements. He said he would come in and talk to me at 2:30 in the afternoon on the 8th," which was later that day. When asked whether Leach had kept the appointment, Sergeant Corbett testified: "No." When asked whether he had talked to the defendant further, Sergeant Corbett replied, "I believe I contacted him. Either I contacted him—I know he left a message on my machine in regards to he wanted to speak with an attorney before talking with the police."

{¶ 6} When later asked what he did next as part of his investigation, Corbett testified, "I believe my next step was I had a short conversation with, I believe, another attorney, or a message was left on my machine from another attorney that Mr. Leach had spoke to."

{¶ 7} Later, the state elicited through Sergeant Corbett that after Leach had signed the *Miranda* form at the station, he answered some questions and then stated that "he wished to consult an attorney." After its case-in-chief, the state sought to have the *Miranda* rights form admitted into evidence. The defense objected, arguing that the form had no relevance. The trial court overruled the objection and stated that the state was required to use the form because Leach had invoked his constitutional right to speak to an attorney. The trial court also stated that admission of the form was harmless beyond a reasonable doubt.

{¶ 8} Leach was convicted of one count of attempted rape in violation of R.C. 2923.02(A) with two firearm specifications, one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) with one firearm specification, and two counts of kidnapping in violation of R.C. 2905.01(A), each with two firearm specifications. He was given an aggregate prison sentence of 12 years.

{¶ 9} The Hamilton County Court of Appeals reversed the judgment of the trial court and remanded the cause to that court. The appellate court held that it was error for the state to use the defendant's invocation of his constitutional right

to remain silent and to consult an attorney as substantive evidence of the defendant's guilt in its case-in-chief. The appellate court further held that the cumulative effect of improperly admitted evidence denied defendant a fair trial.

{¶ 10} The matter is now before this court upon the acceptance of a discretionary appeal.

## Evolution of the Fifth Amendment Privilege

{¶ 11} The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This provision applies to the states through the Fourteenth Amendment. *Malloy v. Hogan* (1964), 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653.

{¶ 12} In the landmark case of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court held that statements by defendants obtained in response to questioning by law enforcement officers while the defendants are in custody are presumed involuntary, and therefore inadmissible, unless proper procedural safeguards have been taken to protect the privilege against self-incrimination. Id. at 478–479, 86 S.Ct. 1602, 16 L.Ed.2d. 694.

{¶ 13} The court detailed those procedural safeguards in the now famous *Miranda* warnings: "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. "A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent * * *." *Wainwright v. Greenfield* (1986), 474 U.S. 284, 298–299, 106 S.Ct. 634, 88 L.Ed.2d 623 (Rehnquist, J., concurring).

{¶ 14} Since *Miranda*, the United States Supreme Court has recognized a distinction between pre-arrest and post-arrest silence, noting that certain scenarios present circumstances that do not always impact a citizen's Fifth Amendment rights. In tracing the evolution of Fifth Amendment law with regard to silence, we will first analyze post-arrest, post-*Miranda* case law and work our way back to pre-arrest, pre-*Miranda* case law, because the United States Supreme Court case law developed in that order.

## Post-Arrest, Post-*Miranda* Silence

{¶ 15} Sergeant Corbett testified that after Leach had signed the *Miranda* rights form at the station, he answered some questions and then stated that "he wished to consult an attorney." After the state's case-in-chief, the trial court admitted the *Miranda* rights form into evidence.

*Defendant's post-arrest, post-Miranda invocation of counsel*

{¶ 16} In *Doyle v. Ohio* (1976), 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91, the United States Supreme Court held that use of a defendant's post-arrest, post-*Miranda* silence for *impeachment* purposes violates the Due Process Clause of the Fourteenth Amendment because although "the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." Id. Further, the court held that "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." Id.

{¶ 17} Ten years later, when confronted with the issue of whether a defendant's post-arrest, post-*Miranda* silence was admissible as *substantive* evidence of guilt in the state's case-in-chief, the court held that such use violated due process, noting that "breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires." *Greenfield,* 474 U.S. at 291, 106 S.Ct. 634, 88 L.Ed.2d 623.

{¶ 18} Here, the appellate court concluded that whether such evidence is used for impeachment or as substantive evidence, the analysis is the same once a person has been given *Miranda* warnings. Thus, the court of appeals held that it was error for the state to elicit evidence of Leach's silence both pre-*Miranda* and post-*Miranda*. We agree with the appellate court's analysis and conclusion regarding Sergeant Corbett's testimony concerning Leach's post-arrest, post-*Miranda* statement that he wished to consult an attorney. If "silence will carry no penalty," *Doyle,* 426 U.S. at 618, 96 S.Ct. 2240, 49 L.Ed.2d 91, then allowing the state to use the defendant's decision to consult an attorney after the defendant was advised of his rights, violated the Due Process Clauses of the state and federal Constitutions.

*Miranda rights waiver form*

{¶ 19} As for the *Miranda* rights waiver form, the appellate court held that "there was no purpose for the admission of the form except as further emphasis of Leach's invocation of his Fifth Amendment rights. The form was irrelevant and improperly admitted." We decline to rule on the *Miranda* rights form to the extent that this issue is not properly before the court because the court, upon the appellee's motion, struck the state's proposition of law relating to this issue.

## Pre–Arrest, Pre-*Miranda* Silence to Impeach

{¶ 20} The United States Supreme Court later spoke on the issue of whether a defendant's pre-arrest, pre-*Miranda* silence may be used to *impeach* the defendant, but it has not yet addressed the issue of whether a defendant's pre-arrest, pre-*Miranda* silence may be used as *substantive* evidence of guilt in the state's case-in-chief.

{¶ 21} A few years later, in *Jenkins v. Anderson* (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86, the court considered a habeas corpus case in which the defendant was challenging his imprisonment for manslaughter. At trial, the defendant took the stand and argued self-defense. On cross-examination, the state asked the defendant, who had surrendered two weeks after the killing, why he did not report the incident to the police if he had in fact been the victim, and the state commented about this two-week silence in its closing argument. The court held that neither the Fifth Amendment right to be free from self-incrimination nor the Fourteenth Amendment right to due process is violated by the use of pre-arrest silence to *impeach* a criminal defendant's credibility. Id. at 238, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86.

{¶ 22} As for the Fifth Amendment, the court noted that "impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." Id. at 238, 100 S.Ct. 2124, 65 L.Ed.2d 86. Regarding the Fourteenth Amendment, the court reasoned that no governmental action induced the petitioner to remain silent before arrest, since the failure to speak occurred before he was taken into custody and given the *Miranda* warnings. Id. at 240, 100 S.Ct. 2124, 65 L.Ed.2d 86.

### Post-Arrest, Pre-*Miranda* Silence

{¶ 23} Finally, the Supreme Court held in *Fletcher v. Weir* (1982), 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490, that when a defendant has already been arrested but has not yet been Mirandized and later takes the stand in his own defense, the Fifth Amendment is not violated when the state cross-examines the defendant concerning his post-arrest silence. In that case, the defendant has not been given the "affirmative assurances embodied in the *Miranda* warnings" that the government will not use his silence against him. In *Fletcher*, the defendant was arrested and later Mirandized. His first statement explaining his actions was made when he took the witness stand and claimed that he had acted in self-defense. The state was able to cross-examine him on his reasons for remaining silent upon arrest given his claim that he had been the real victim. The court held that the use of his prior silence to impeach his version of events was permissible once he testified.

{¶ 24} However, the United States Supreme Court has not addressed whether post-arrest, pre-*Miranda* silence may be used as *substantive* evidence of guilt in the state's case-in-chief.

### Pre–Arrest, Pre-*Miranda* Silence in Case–in–Chief

{¶ 25} The state in this case presented testimony that Leach, who had not yet been arrested or Mirandized, remained silent and/or asserted his right to counsel in the face of questioning by law enforcement. This testimony was clearly meant

to allow the jury to infer Leach's guilt. Otherwise, jurors might reason, Leach would have offered his version of events to law enforcement. While such testimony may be incriminating, the question posed today to this court is whether the admission of such evidence offends the Fifth Amendment.

{¶ 26} Although this question remains unanswered by the United States Supreme Court, United States circuit court rulings provide some guidance. The Fifth, Ninth, and Eleventh Circuit Courts of Appeals have held that evidence of pre-arrest, pre-*Miranda* silence as substantive evidence of guilt is admissible in the state's case-in-chief. They reason that a pre-arrest environment lacks the government coercion or compulsion implicit in an understanding of the Fifth Amendment. See *United States v. Zanabria* (C.A.5, 1996), 74 F.3d 590 (evidence of defendant's pre-arrest silence is not protected by Fifth Amendment); *United States v. Rivera* (C.A.11, 1991), 944 F.2d 1563 (government may comment on a defendant's silence if it occurred prior to the time that he was arrested and given his *Miranda* warnings); and *United States v. Oplinger* (C.A.9, 1998), 150 F.3d 1061 (the use of defendant's pre-arrest, pre-*Miranda* silence did not violate defendant's privilege against self-incrimination or his right to due process).

{¶ 27} The First, Sixth, Seventh, and Tenth circuit courts of appeals have reached opposite results. See *United States ex rel. Savory v. Lane* (C.A.7, 1987), 832 F.2d 1011 (the cases that have allowed introduction of defendant's pre-arrest silence rely on the rationale that the defendant submits himself to possible impeachment by taking the stand); *Coppola v. Powell* (C.A.1, 1989), 878 F.2d 1562 (application of the privilege is not limited to persons in custody or charged with a crime; it may also be asserted by a suspect who is questioned during the investigation of a crime); and *United States v. Burson* (C.A.10, 1991), 952 F.2d 1196 (the use of pre-arrest, pre-*Miranda* silence as substantive evidence of guilt violates the Fifth Amendment).

{¶ 28} Most relevant to our analysis is *Combs v. Coyle* (C.A.6, 2000), 205 F.3d 269, in which the court held that the prosecutor's use of defendant's statement to a police officer at the scene of the crime, "Talk to my lawyer," violated his Fifth Amendment right against self-incrimination. The court held that the use of pre-arrest silence as substantive evidence of guilt is an impermissible burden upon the exercise of the Fifth Amendment privilege. The Sixth Circuit Court of Appeals undertook a two-part analysis after which it determined that (1) admitting evidence of pre-arrest silence substantially impairs the policies behind the privilege against self-incrimination; and (2) the government's use of pre-arrest silence in its case-in-chief is not a legitimate governmental practice. Id., 205 F.3d at 285.

## Policies behind the Fifth Amendment Privilege

{¶ 29} Here, the state's case against Leach contained no physical evidence and rested solely on the credibility of the state's witnesses. At trial, Sergeant

Corbett was permitted to testify that Leach had left him the message that he wanted to speak with an attorney before talking to the police. The prosecution alluded to Leach's pre-arrest silence through invocation of his right to counsel during opening argument as well. Leach did not testify at his trial, so evidence of his pre-arrest silence was not used to impeach his testimony. Instead, the state asserts that this evidence is admissible as substantive evidence of guilt.

{¶ 30} We conclude that the use of Leach's pre-arrest silence in the state's case-in-chief as *substantive* evidence of guilt subverts the policies behind the Fifth Amendment. The Supreme Court has held that the privilege against self-incrimination "reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load;' our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life;' our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent.'" (Internal citations omitted.) *Murphy v. Waterfront Comm. of New York Harbor* (1964), 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678.

{¶ 31} Allowing the use of pre-arrest silence, evidenced here by the pre-arrest invocation of the right to counsel, as substantive evidence of guilt in the state's case-in-chief undermines the very protections the Fifth Amendment was designed to provide. To hold otherwise would encourage improper police tactics, as officers would have reason to delay administering *Miranda* warnings so that they might use the defendant's pre-arrest silence to encourage the jury to infer guilt. See *State v. Easter* (1996), 130 Wash.2d 228, 240, 922 P.2d 1285. Use of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence.

### Legitimate Governmental Practice

{¶ 32} As for the second prong of the *Combs* analysis, the state argues that this evidence was introduced as evidence of the "course of the investigation." The appellate court found this argument to be unpersuasive, and we agree. Sergeant Corbett's testimony that he had made an appointment to meet with Leach to discuss the case but that the appointment was not kept is legitimate. However, we do not find the testimony that Leach stated that he wanted to speak with an

attorney before speaking with police to be a statement explaining the course of the investigation. The information was not material to the jury's determination of guilt or innocence. Rather, the state now concedes that it intended to lead the jury to one conclusion by using evidence of Leach's pre-arrest silence in its case-in-chief: that innocent people speak to police to clear up misunderstandings, while guilty people consult with their attorneys. The introduction of this evidence was not inadvertent. In its opening statement, the state mentioned that Leach had refused to speak with law enforcement without an attorney. Later, the state introduced testimony regarding his pre-arrest, pre-*Miranda* invocation of his right to counsel when the prosecutor commented that after agreeing to meet with the police, Leach called back and said that he "wanted an attorney." Still later, the state highlighted the evidence again in Sergeant Corbett's testimony.

{¶ 33} The use of pre-arrest silence for impeachment is distinguishable. When a defendant testifies at trial, the defendant has "cast aide his cloak of silence." *Jenkins*, 447 U.S. at 238, 100 S.Ct. 2124, 65 L.Ed.2d 86. Thus, use of pre-arrest silence as impeachment evidence is permitted because it furthers the truth-seeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record. But using a defendant's prior silence as substantive evidence of guilt actually lessens the prosecution's burden of proving each element of the crime and impairs the "sense of fair play" underlying the privilege. See *Combs*, 205 F.3d at 285.

{¶ 34} Furthermore, the state may argue inferences from the silence that are not reliable. Id. A defendant's pre-arrest silence is inherently ambiguous and, therefore, not probative of guilt. Just as " 'every post-arrest silence is insolubly ambiguous,' " a defendant may remain silent for many reasons pre-arrest. See Id., 205 F.3d at 285, quoting *Doyle*, 426 U.S. at 617, 96 S.Ct. 2240, 49 L.Ed.2d 91. As the First District Court of Appeals noted, in the face of police questioning, the suspect might remain silent for innocent reasons: fear of police, threats from another person not to speak with police, embarrassment about a relationship or course of conduct that is not necessarily criminal, or the belief that explaining his or her conduct is futile. With the proliferation of movies and television shows portraying the criminal justice system, it would be difficult to find a person living in America who has not heard of *Miranda* warnings. In fact, at trial the prosecutor, when questioning Sergeant Corbett on direct examination, stated: "And if you can—everybody has heard them from 'Cops,' or whatever else—what are the Miranda warnings and what does the form say?"

{¶ 35} We fail to see a reason to permit individuals to remain silent only when they have been specifically told by police of their right to do so. "We have also

learned the companion lesson of history that no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights. * * * If the exercise of constitutional rights will thwart the effectiveness of a system of law enforcement, then there is something very wrong with that system." *Escobedo v. Illinois* (1964), 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977.

{¶ 36} Rather, we agree with the Sixth Circuit and with the appellate court below: an accused's right to silence "is not derived from *Miranda*, but from the Fifth Amendment." And the *Miranda* warnings themselves indicate that the right to silence exists prior to the time the government must advise the person of such right, i.e., you have the right to *remain* silent. See *Easter*, 130 Wash.2d at 238, 922 P.2d 1285.

{¶ 37} We are left to conclude that the state's substantive use of the defendant's pre-arrest, pre-*Miranda* silence substantially subverts the policies behind the Fifth Amendment privilege against self-incrimination and is not a legitimate governmental practice.[1]

## Conclusion

{¶ 38} Therefore, we hold that use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. Because the evidence of guilt was not overwhelming in this case, the admission of defendant's pre-arrest, pre-*Miranda* silence was clearly prejudicial. We further affirm the appellate decision with respect to the post-*Miranda* invocation of counsel. Accordingly, we affirm the judgment of the court of appeals reversing the judgment of the trial court, and we remand the cause for a new trial.

Judgment affirmed
and cause remanded.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and O'DONNELL, JJ., concur.

PFEIFER and O'CONNOR, JJ., concur separately.

---

**O'CONNOR, J., concurring.**

{¶ 39} While I concur with today's majority, I write separately to expand upon our reasoning.

---

1. In light of our determination that the use of pre-arrest silence in the state's case-in-chief as substantive evidence of guilt violates the Fifth Amendment, we need not address the issue of whether the use of pre-arrest silence violated the defendant's due process rights.

144

{¶ 40} My overriding concern is that substantive use of noncustodial silence would impinge upon the privilege against self-incrimination by subjecting citizens confronted by law enforcement to an impossible choice. Upon questioning, whether custodial or non-custodial, such citizens will either speak or remain silent. If silence is deemed incriminating, then citizens might reasonably feel compelled to trade the certainty of incrimination by silence for the possibility of incrimination by a statement. In light of the deep-rooted and enduring values embodied in the privilege against self-incrimination,[2] I find this paradox constitutionally repugnant.

{¶ 41} The maxim *nemo tenetur seipsum accusare*—that no man is bound to accuse himself—is an overarching principle that transcends the various stages of a criminal investigation. See, e.g., *Ziang Sung Wan v. United States* (1924), 266 U.S. 1, 14–15, 45 S.Ct. 1, 69 L.Ed. 131 ("[A] confession obtained by compulsion must be excluded whatever may have been the character of the compulsion, and whether the compulsion was applied in a judicial proceeding or otherwise"). Even in restricting *Miranda*'s application, the Supreme Court has stated that noncustodial questioning entails a somewhat coercive environment. Under those situations, the Supreme Court has "asked whether the pressure imposed in such situations rises to a level where it is likely to 'compe[l]' a person 'to be a witness against himself.'" *McKune v. Lile* (2002), 536 U.S. 24, 49, 122 S.Ct. 2017, 153 L.Ed.2d 47. If a citizen's choice is between incrimination by silence and relinquishing his right to silence, the state has created such compelling pressure.

{¶ 42} I acknowledge that noncustodial statements are generally admissible and do not run afoul of the Fifth Amendment. Nonetheless, silence is distinguishable as a nonstatement, and it would be anathema to the values embodied by the Fifth Amendment to validate a choice between two mutually exclusive, self-damning propositions. Moreover, the right to remain silent exists regardless of custody. It does not exist by virtue of *Miranda* or solely upon notification by law enforcement. *Miranda* merely requires notification of the right in order to counter the inherently coercive environment of custody. It would be wholly disingenuous to acknowledge the right to remain silent and then to hold that exercising it is probative of guilt.

{¶ 43} The Fifth Amendment privilege against self-incrimination has been called "the essential mainstay of our adversary system." *Miranda*, 384 U.S. at 460, 86 S.Ct. 1602, 16 L.Ed.2d 694. While the privilege is "sometimes 'a shelter to the guilty', [it] is often 'a protection to the innocent'" that is due our zealous guard. *Murphy v. Waterfront Comm. of New York Harbor* (1964), 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678, quoting *Quinn v. United States* (1955), 349 U.S.

---

2. See *Miranda v. Arizona* (1966), 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694.

155, 162, 75 S.Ct. 668, 99 L.Ed. 964. See, also, *Kastigar v. United States* (1972), 406 U.S. 441, 444–445, 92 S.Ct. 1653, 32 L.Ed.2d 212. For the foregoing reasons, I concur.

PFEIFER, J., concurs in the foregoing concurring opinion.

---

Michael K. Allen, Hamilton County Prosecuting Attorney, Phillip R. Cummings and Scott M. Heenan, Assistant Prosecuting Attorneys, for appellant.

Arenstein & Gallagher and William R. Gallagher, for appellee.

Paul Skendelas, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Lawyers.