DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Peter Riffle appeals his conviction for rape in the Medina County Court of Common Pleas. We reverse and remand.
 {¶ 2} On August 16, 2006, Riffle was indicted on one count of rape of a victim under the age of thirteen years in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. The victim was Riffle's step-daughter, S.R. On December 18, 2006, Riffle was tried to a jury, but the jury was unable to reach a unanimous verdict and a new trial date was set. Riffle was re-tried on January 29, 2007, and he was convicted by the second jury. Riffle was sentenced to four years of imprisonment ("Judgment Entry"). Riffle appeals the Judgment and raises four assignments of error.
 ASSIGNMENT OF ERROR I "THE LOWER COURT ERRED AND DENIED [RIFFLE] HIS RIGHT TO DUE PROCESS OF LAW PURSUANT TO THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT PERMITTED EVIDENCE *Page 2 
REGARDING HIS POST-MIRANDA SILENCE AND ASSERTION OF THE RIGHT TO COUNSEL[.]"
 {¶ 3} In his first assignment of error, Riffle asserts that his constitutional rights were violated: (1) when Police Chief Sivard testified that once given his Miranda warnings, Riffle exercised his right to remain silent; (2) when a social worker testified as to the circumstances of her interview with Riffle and noted that Riffle had told police that he wanted an attorney; and (3) when the State referenced Riffle's decision to cease interrogation with police during closing argument. Riffle argues that pursuant to Doyle v. Ohio (1976),426 U.S. 610, the "use of a [defendant's post-arrest, postMiranda silence for purposes of impeachment violates Due Process." Riffle acknowledges that trial counsel did not object to this evidence during trial and thus, asserts plain error.
 {¶ 4} The State argues that there was no Doyle violation because Riffle was not under arrest at the time he ceased interrogation and signed the Miranda form. Jenkins v. Anderson (1980), 447 U.S. 231, 240;State v. Leach (2004), 102 Ohio St.3d 135, 139, 2004-Ohio-2147, at ¶ 22. The State further maintains that there was no plain error and that any error was harmless beyond a reasonable doubt because the victim and her psychologist's testimony alone, constitute overwhelming proof of Riffle's guilt.
 {¶ 5} "[I]f a party forfeits an objection in the trial court, reviewing courts may notice only `[p]lain errors or defects affecting substantial rights.'" State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642, at ¶ 15, quoting Crim. R. 52(B). To establish plain error, "there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be `plain' within the meaning of Crim. R. 52(B), an error must be an `obvious' defect in the trial proceedings. Third, the error must have affected * * * the outcome of the trial." (Internal citations omitted.) State v. Barnes (2002),94 Ohio St.3d 21, 27. "This court notices plain error only in exceptional *Page 3 
circumstances to prevent a manifest miscarriage of justice." State v.Myers, 9th Dist. No. 23853, 2008-Ohio-1913, at ¶ 19. See, also,State v. Long (1978), 53 Ohio St.2d 91, 97.
 {¶ 6} "Questioning regarding post-Miranda silence is improper."State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541, at *4, citingDoyle, 426 U.S. at 619. With regard to a defendant's Fifth Amendment rights, the Supreme Court of Ohio had held that "the use of pre-arrest silence as substantive evidence of guilt is an impermissible burden upon the exercise of the Fifth Amendment privilege." Leach, supra, at ¶ 28, citing Combs v. Coyle (C.A. 6, 2000), 205 F.3d 269, 285. InLeach, the Supreme Court of Ohio found references to bothpre-Miranda and post-Miranda silence problematic and applied its constitutional analysis to both. The Leach court held that testimony that Leach, "who had not yet been arrested or Mirandized, remained silent and/or asserted his right to counsel in the face of questioning by law enforcement * * * was clearly meant to allow the jury to infer Leach's guilt[,]" especially where Leach did not take the witness stand and such evidence was not offered to impeach his testimony.Leach, supra, at ¶ 25. In Leach, the Supreme Court adopted the analysis used by the Sixth Circuit Court of Appeals on the issue of pre-arrest silence, and stated:
 "Most relevant to our analysis is Combs v. Coyle (C.A.6, 2000), 205 F.3d 269, in which the court held that the prosecutor's use of defendant's statement to a police officer at the scene of the crime, `Talk to my lawyer,' violated his Fifth Amendment right against self-incrimination. The court held that the use of pre-arrest silence as substantive evidence of guilt is an impermissible burden upon the exercise of the Fifth Amendment privilege. The Sixth Circuit Court of Appeals undertook a two-part analysis after which it determined that (1) admitting evidence of pre-arrest silence substantially impairs the policies behind the privilege against self-incrimination; and (2) the government's use of pre-arrest silence in its case-in-chief is not a legitimate governmental practice." Leach, supra, at ¶ 28, citing Combs, 205 F.3d at 285.
 {¶ 7} Riffle asserts three instances where testimony related to his silence violated his Fifth Amendment rights and asserts its admission constituted plain error. During the State's *Page 4 
case-in-chief, Chief of Lodi Police, Stephen Sivard, testified about the circumstances in which he interviewed Riffle. Sivard testified that he had asked Riffle's father to leave the interview room, and stated:
 "Q. Was that — — tell me about that. Did that just happen right away or-
 "A. It happened after I had Mr. Riffle, Sr. sign as the witness of the Miranda warning.
 "We had been told by the Riffles that they had already contacted a lawyer and was advised that he [Riffle, Sr.] could sit in.
 * * *
 "Q. All right. So eventually, Mr. Riffle, Sr. left the room?
 "A. Yes, sir.
 * * *
 "Q. And you interviewed Mr. Riffle, the Defendant?
 * * *
 "A. I informed the Defendant of the allegations that were made by the victim. He indicated at that time that he thought something like this would happen because he's divorcing her mother. And at that time I believe * * * he indicated that he wanted to contact an attorney before making any comments to me.
 * * *
 "Q. All right. And then the interview was — as far as you were concerned, was terminated?
 "A. As soon as he indicated that he wanted to speak with an attorney, I filled out the bottom of the rights form indicating what time he stated that and asked him to sign, and I advised him that I could no longer question him and excused myself from the interview."
 {¶ 8} Karen Bennett, the social services investigator from Medina Job and Family Services, testified as to the circumstances surrounding her interview with Riffle.
 "Q. Tell us about the circumstances surrounding that interview. *Page 5 
 "A. At that point I kind of go through the whole risk assessment, there's a series of questions, to talk to him about his family, the children, discipline, things he experienced.
 "He had — — we did not go into the sexual abuse part per se, as to interviewing what, you know the child said and that, because he had said to Chief Sivard that he wanted an attorney."
 {¶ 9} During closing argument, the prosecutor referenced a different portion of Bennett's testimony that Riffle had asked her about what would happen to him if he admitted the allegations. The prosecutor stated:
 "Not if anything remotely close to that ever happened would you lean back in your chair and say, `What if I did do that? Would I be in trouble?' Nobody would do that if you didn't do anything wrong. You wouldn't do it. And you especially wouldn't do it after you dismiss a police officer from the room and ask the social worker about that."
 {¶ 10} Here, the references made at trial were to Riffle's pre-arrest,post-Miranda silence, making the references to his silence even more egregious than in Leach. As in Leach, Riffle did not take the stand and the questions posed were not used to impeach Riffle. As stated inLeach,
 "Allowing the use of pre-arrest silence, evidenced here by the pre-arrest invocation of the right to counsel, as substantive evidence of guilt in the state's case-in-chief undermines the very protections the Fifth Amendment was designed to provide. To hold otherwise would encourage improper police tactics, as officers would have reason to delay administering Miranda warnings so that they might use the defendant's pre-arrest silence to encourage the jury to infer guilt. See State v. Easter (1996), 130 Wash.2d 228, 240, 922
P.2d 1285. Use of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." Leach, supra, at ¶ 31.
 {¶ 11} The State argues that references to Riffle's silence were "merely background information to explain circumstances of [Defendant's] subsequent discussion with the social worker." Even were that the case, the Supreme Court of Ohio has discounted the argument that pre-arrest silence is appropriate if "introduced as evidence of the `course of the investigation' *Page 6 
* * * [because such] information [is] not material to the jury's determination of guilt or innocence." Leach, supra, at ¶ 32. Moreover, especially with regard to Sivard's testimony, the State had no reason to ask Sivard about the circumstances surrounding his interview with Riffle other than to establish that Riffle chose to remain silent. The only information gleaned from Sivard's testimony besides the fact that Riffle chose to remain silent was that Riffle told Sivard "that he thought something like this would happen because he's divorcing the * * * victim's mother." That Riffle made this statement could have been established through a single question to Sivard that would not have elicited any reference to Riffle's decision to invoke his constitutional right to remain silent. If references to post-Miranda silences are permitted under the guise of establishing "background information," it would be futile for a defendant to ever effectively invoke his right to remain silent. We, therefore, hold that the evidence of, and the State's references to, Riffle's silence were improper.
 {¶ 12} We now must determine the effect of these improper references on the trial. Barnes, 94 Ohio St.3d 21, 27. We believe that Riffle was so materially prejudiced by the State's questions or comments that plain error occurred. The state of the evidence was such that Riffle was deprived of a fair trial.
 {¶ 13} Only S.R. and her doctor (Dr. Hancock) testified that S.R. had been sexually abused. Other witnesses (S.R.'s mother and investigating officers) testified about the investigation and/or what they had been told by S.R. Here, as in Leach, the state's case "contained no physical evidence and rested solely on the credibility of the state's witnesses."Leach, supra, at ¶ 29. While this is certainly sufficient evidence, it is not overwhelming. Leach, supra, at ¶ 38 (holding that the state's case that had no physical evidence and rested solely on the credibility of the state's witnesses did not demonstrate overwhelming guilt so as to negate the *Page 7 
prejudicial effect of references to defendant's silence). See, also,State v. Keenan (1993), 66 Ohio St.3d 402, 410-11 (holding that conflicting and potentially biased testimony did not overwhelmingly establish defendant's guilt so as to negate the plain error that occurred when prosecutor improperly referenced the bad character of defendant's friends to prove the character of the defendant); State v.Johnson (1994), 71 Ohio St.3d 332, 339 (holding that inadmissible hearsay from three witnesses was not harmless given the less than overwhelming other evidence establishing defendant's guilt); andState v. Chapman, 9th Dist. No. 07CA009161, 2008-Ohio-1452, at ¶ 32-35
(finding independent evidence of defendant's guilt not so overwhelming that the plain error which occurred when prosecutor entered into a contingency plea agreement was rendered harmless).
 {¶ 14} We are not holding that a defendant cannot be convicted without physical evidence. To the contrary, the law is well settled in this State that the testimony of a single witness, if believed by the trier of fact, is sufficient without more to support a criminal conviction.State v. Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, at ¶ 51-57. However, the limited evidence of Riffle's guilt in this case, when combined with the lack of physical evidence, does not demonstrate overwhelming evidence of Riffle's guilt so as to outweigh the effect of the improper references to Riffle's silence. See Leach, supra.
 {¶ 15} We are also mindful that "`there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" State v. Hill (1996), 75 Ohio St.3d 195, 212, quotingUnited States v. Hasting (1983), 461 U.S. 499, 508-9. We are equally mindful that generally prosecutorial infractions that do not "permeate the trial" do not deny a defendant a fair trial. See, State v.Green (2000), 90 Ohio St.3d 352, 374. Here, however, a police officer and a social worker were permitted to testify that Riffle wanted to speak with an *Page 8 
attorney before talking to the police. As in Leach, the prosecution here "alluded to [Riffle's] pre-arrest silence through invocation of his right to counsel during [closing] argument as well." Leach, supra, at ¶ 29. Further, the defendant in Leach, like Riffle here, "did not testify at his trial, so evidence of his pre-arrest silence was not used to impeach his testimony." Id. Moreover, as discussed above, the references to Riffle's silence are even more egregious than inLeach because Riffle had already been Mirandized and had invoked his right to remain silent.
 {¶ 16} We find three references to Riffle's post-Miranda silence in both direct testimony in the State's case-in-chief and closing argument did permeate the trial so as to deny Riffle a fair trial. We are left to conclude that the state's substantive use of Riffle's pre-arrest silence "substantially subverts the policies behind the Fifth Amendment privilege against self-incrimination and is not a legitimate governmental practice." Leach, supra, at ¶ 37. Moreover, because the evidence of guilt was not overwhelming in this case, the admission of evidence of and references to Riffle's pre-arrest, and post-arrest silence was clearly prejudicial and thereby denied Riffle a fair trial. See, Leach at ¶ 38.
 {¶ 17} Riffle's first assignment of error is sustained.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED AND DENIED [RIFFLE] DUE PROCESS OF LAW AND A FAIR TRIAL DUE TO ADMISSION OF EXPERT TESTIMONY REGARDING THE VERACITY OF THE COMPLAINING WITNESS[.]"
 ASSIGNMENT OF ERROR III "STATE MISCONDUCT DURING [RIFFLE'S] TRIAL VIOLATED PROTECTIONS AFFORDED BY THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND REQUIRE REVERSAL[.]" *Page 9 
 ASSIGNMENT OF ERROR IV "[RIFFLE] WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION[.]"
 {¶ 18} In his second assignment of error, Riffle argues that the trial court improperly allowed S.R.'s psychologist to testify as to her opinion that S.R. was telling the truth about the allegations. In his third assignment of error, Riffle asserts that the State engaged in misconduct by: (1) stating in opening argument that the defense would likely use a "built-in" defense thereby implying the defense is false or illegitimate; (2) imputing that defense counsel was insincere during closing argument; (3) asking the jury during closing argument to compare S.R.'s veracity with that of their own teenage daughters; (4) giving a personal belief as to the veracity of the evidence during closing argument; and (5) implying during closing argument that the jury had a duty to convict Riffle because of S.R.'s courage in coming forward. In his last assignment of error, Riffle asserts that he was denied the effective assistance of counsel based on trial counsel's failure to object to the evidence and statements raised in his first three assignments of error. Because of the resolution of Riffle's first assignment of error, Riffle's second, third, and fourth assignments of error are moot. See App. R. 12(A)(1)(c).
 {¶ 19} Riffle's first assignment of error is sustained and his second, third and fourth assignments of error are moot. The judgment of the Medina County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
 The Court finds that there were reasonable grounds for this appeal. *Page 10 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
DICKINSON, J. CONCURS