[Cite as *State v. Tichener*, 2016-Ohio-1021.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| vs. | : | |
| | : | Case No. 15 CA 35 |
| CODY TICHENER | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas,
Case No.  14 CR 0438

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 14, 2016

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

GREGG MARX      SCOTT P. WOOD
PROSECUTING ATTORNEY      CONRAD/WOOD
ANDREA K. GREEN      120 ½ East Main Street
ASSISTANT PROSECUTOR      Lancaster, Ohio  43130
239 West Main Street, Suite 101
Lancaster, Ohio  43130

*Wise, J.*

**{¶1}** Appellant Cody Tichenor appeals his conviction and sentence, entered in the Fairfield County Court of Common Pleas following a bench trial, on one count of felonious assault, one count of discharge of a firearm on or near prohibited premises, and one count of improperly handling a firearm in a motor vehicle, with  3 year gun specifications on each count

**{¶2}** Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** On October 31, 2014, the Fairfield County Grand Jury indicted Appellant Cody Tichenor on the following charges: One count of Felonious Assault, in violation of R.C. §2903.11(A)(2) & (D)(1)(a), a felony of the second degree; Four counts of Improperly Discharging a Firearm at or Into a Habitation or a School Safety Zone, in violation of R.C. §2923.161(A)(1) & (C), a felony of the second degree; One count of Discharge of Firearm on or Near Prohibited Premises, in violation of R.C. §2923.162(A)(3) & (C)(2), a felony of the third degree; and One count of Improperly Handling Firearms in a Motor Vehicle, in violation of R.C. §2923.16(A) & (1), a felony of the fourth degree. Each count of the Indictment included a three-year firearm specification, pursuant to R.C. §2941.145(A).

**{¶4}** These charges arose out of conduct which allegedly occurred on October 22, 2014.  On said date, Jenna Coleman, Kevin Arledge, and several other friends were hanging out at Tyler Bentley's home in Rustic Ridge trailer park. (T. at 50). This group of friends would hang out together regularly, in a converted shed that was on Tyler's property. (T. at 29-31). Appellant and Jenna had recently ended a romantic relationship

which had lasted for several years. (T. at 26-27). They also recently had a child together. (T. at 27). Jenna had recently started dating a mutual friend, Kevin Arledge.

{¶5}    On the afternoon of October 22, 2014, Appellant and Jenna were fighting via text message about their child. (T. at 211). During this conversation, Appellant threatened in one particular text message that he was going to come over and shoot Kevin. (T. at 52-53). Appellant proceeded to call Jenna several times, and once she stopped answering, he left her a voicemail. (T. at 53-56). In this voicemail, Appellant stated that he knew Jenna was dating Kevin, and that he would "lay a bullet into him." (T. at 57). He went on to state that he would "put a bullet in every person in that trailer park" if he had to. (T. at 57-58). Appellant called Jenna several more times, repeating the threats he made in the voicemail. (T. at 61-64).

{¶6}    A few moments later, Kevin, Jenna, and the rest of the group heard four gunshots after they saw a car slow down on the road. (T. at 70-71). They could hear the bullets hitting the shed, but they could not tell exactly where they had hit. (T. at 71). Four bullets penetrated the shed. *Id.* Jenna and Tyler were sitting on a couch in the shed when the shots were fired. (T. at 114). One of the bullets traveled all the way through the shed and lodged itself in a steel door, at a height that was later deemed to be at "head level." (T. at 74-79). Had the occupants of the shed been standing in the line of fire, they likely would have been hit by this bullet. *Id;* (T. at 116).

{¶7}    Deputies and a detective from the Fairfield County Sheriff's Department were dispatched to the scene, and after collecting evidence and speaking to witnesses it was deduced that Appellant was the likely shooter. (T. at 161-215). Appellant was located at his father's home, was placed under arrest, and transported to the Fairfield

County Detective Bureau where he spoke with Detective Meadows. (T. at 215-16; Supp. T. at 7-9). Appellant stated that he knew why Detective Meadows wished to speak with him. (Supp. T. at 9). Appellant signed a waiver of his Miranda rights and agreed to speak with Detective Meadows without an attorney present. *Id;* (T. at 217). Appellant asked Detective Meadows if he should get an attorney, because he wasn't really sure how that worked. Detective Meadows advised Appellant that he could not provide him legal advice, but that if he wanted a lawyer they could not speak further about the incident. (Supp. T. at 12; 20-21). Detective Meadows advised Appellant that he had a right to counsel during the interview. (Supp. T. at 20-30). After this explanation, Appellant began discussing the incident without prompting from Detective Meadows. (Supp. T. at 27).

{¶8}    Appellant reiterated on several occasions that he wanted to cooperate; he wanted to provide his side of the story. (Supp. T. at 12; 23; 25; 29). Appellant explained how he called Jenna that evening and told her he was going to shoot Kevin. (T. at 311). Appellant explained how he left his father's home with a rifle, went to the trailer park, stopped his vehicle on the road, and fired the rifle numerous times from inside of the car directly toward the shed. (T. at 219; 312-20). At no point during the 50-minute interview did Appellant affirmatively state that he wanted an attorney. (Supp. T. at 13; 17-31; 41-42) (T. at 283-342).

{¶9}    Appellant was indicted of the following:

Count One: Felonious assault, a felony of the second degree, with a 3-year gun specification;

Count Two: Improperly discharging a firearm at or into a habitation, a felony of the second degree, with a 3-year gun specification;

Count Three: Improperly discharging a firearm at or into a habitation, a felony of the second degree, with a 3-year gun specification;

Count Four: Improperly discharging a firearm at or into a habitation, a felony of the second degree, with a 3-year gun specification;

Count Five: Improperly discharging a firearm at or into a habitation, a felony of the second degree, with a 3-year gun specification;

Count Six: Discharge of a firearm on or near a prohibited premises, a felony of the third degree, with a 3-year gun specification;

Count Seven: Improperly handling a firearm in a motor vehicle, a felony of the fourth degree, with a 3-year gun specification.

{¶10} On January 14, 2015, Appellant filed a motion to suppress the statements he made to law enforcement during a taped interview following his arrest, alleging that he had invoked his right to counsel.

{¶11} At an oral hearing on March 23, 2015, the trial court was presented with evidence and argument on Appellant's motion to suppress. The trial court took the matter under advisement.

{¶12} By Judgment entry filed April 10, 2015, the trial court denied Appellant's motion to suppress, finding that Appellant's statements to Detective Meadows were not a clear invocation of his right to counsel.

{¶13} On April 21, 2015, Appellant appeared in open court and waived his right to a jury and asked to proceed to a bench trial.

**{¶14}** A bench trial immediately commenced, and on April 22, 2015 the trial court found Appellant guilty of Counts One, Six, and Seven, including the associated firearm specifications. (Entry of Verdict, Fairfield C.P. No. 2014-CR-0438, April 29, 2015).

**{¶15}** At sentencing, the trial court found that Counts One, Six, and Seven were allied offenses of similar import. The State elected to proceed on Count One. Appellant was sentenced to three (3) years imprisonment on the underlying offense of felonious assault, and three (3) years mandatory imprisonment for the firearm specification. The sentences were ordered to run consecutively to one another, for a total of six (6) years imprisonment. (Judgment Entry of Sentence, Fairfield C.P. No. 2014-CR-0438, May 26, 2015).

**{¶16}** Appellant now appeals to this Court, assigning the following error for review:

## ASSIGNMENT OF ERROR

**{¶17}** "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENTS TO LAW ENFORCEMENT AFTER HE INVOKED HIS RIGHT TO COUNSEL."

### I.

**{¶18}** In his sole Assignment of Error, Appellant argues that the trial court erred in denying his motion to suppress. We disagree.

**{¶19}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the

role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See*, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

**{¶21}** In the case *sub judice*, Appellant claims that all questioning should have stopped when he invoked his right to counsel, and therefore his statements obtained in violation of his Fifth Amendment rights should have been suppressed.

**{¶22}** "The Fifth Amendment to the United States Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' " *State v. Leach*, 102 Ohio St.3d 135, 2004–Ohio–2147, ¶ 11. The Fifth Amendment applies to the states through the Fourteenth Amendment. *State v. Graham*, 136 Ohio St.3d 125, 2013–Ohio–2114, ¶ 19. During a custodial interrogation, a suspect has the right to remain silent and to be represented by an attorney. *Miranda v. Arizona*, 384 U.S. 436, 469 (1966). "A suspect's right to an attorney during questioning * * * is derivative of his [or her] right to remain silent * * * [,]" under the Fifth Amendment. Leach at ¶ 13, quoting *Wainwright v. Greenfield*, 474 U.S. 284, 298–299 (1986) (Rehnquist, J., concurring). When a person is subject to a custodial interrogation, he must be informed of his rights to remain silent and to an attorney. *Miranda* at 469 {¶ 21}. When a suspect in police custody invokes his Fifth Amendment right to counsel, police interviewers must cease the interrogation and may not further initiate the interview until the suspect's lawyer is present. *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Any statement, question or remark (other than those normally attendant to arrest and custody) that the police should know are reasonably "likely to elicit an incriminating response" is an interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "The latter portion of this definition [of interrogation] focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.*

{¶23} We review the totality of the circumstances in determining whether a suspect has voluntarily waived his Miranda rights. *In re Taylor* at 2. "[T]he totality of the circumstances include[s] the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; the existence of threat or inducement." *State v. Shepherd*, 9th Dist. Summit No. 15777, 1993 WL 36093, (Feb. 17, 1993), quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus, vacated in part on other grounds 438 U.S. 911 (1978).

{¶24} "The State bears the burden of proving a waiver of *Miranda* rights by a preponderance of the evidence." *State v. Barr*, 9th Dist. Summit No. 16822, 1995 WL 244156, (Apr. 26, 1995), citing *State v. Bobo*, 65 Ohio App.3d 685, 689 (8th Dist.1989).

{¶25} In the instant case, the trial court found the relevant portions of the conversation between Appellant and Detective Meadows were as follows: (1) "Should I get an attorney"; and (2) "but can I request a lawyer at this point?" (Supp. T. at 20-21).

{¶26} When a suspect in custody expresses "his desire to deal with the police only through counsel," the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him." *State v. Voss,* 12th Dist. Warren No. CA2006–11–132, 2008–Ohio–3889, ¶ 65, citing *Edwards v. Arizona,* 451 U.S. 477, 485–485, 101 S.Ct. 1880 (1981). To invoke the right to have an attorney present during interrogation, a suspect must unambiguously request counsel such that a reasonable officer in the circumstances could understand the statement to be a request for an attorney. *Voss* at ¶ 66, quoting *Davis v. United States,* 512 U.S. 452, 459, 101 S.Ct. 2350 (1994). However, if the statement is not clear that the person is

requesting an attorney, then the officers are not required to stop questioning the suspect. *Id.* Ohio courts has found the following requests to be equivocal: I think I need a lawyer." *State v. Henness*, 79 Ohio St. 3d 53, 63, 679 N.E.2d 686 (1997). "Maybe I want a lawyer, maybe I should talk to a lawyer." *State v. Salinas*, 11th Dist. Lake No. 96-L-146, 124 Ohio App. 3d 379, 384, 706 N.E.2d 381 (1997). "I think that I would like an attorney." *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619 (Feb. 9, 1999). "I think I might need to talk to a lawyer." *State v. Hanson*, 2nd Dist. Montgomery No. 15405, 1996 WL 535297 (Sept. 13, 1996) "Where's my lawyer?" *State v. Williams*, 10th Dist. Franklin No. 03AP-4, 2003-0hio-7160. "Well, can I have a lawyer present?" *State v. Foster*, 11th Dist. Trumbull No. 2000-T -0333, 2001-0hio-8806. "Well, can I talk to my lawyer then if there is something wrong like that?" *State v. Knight*, 2nd Dist. No. 04-CA-35, 2008-0hio-4926. "[C]an I have an attorney?" *State v. Raber*, 189 Ohio App.3d 396, 2010-0hio- 4066,938 N.E.2d 1060 (9th Dist.).

{¶27} Here, we find Appellant's inquiry upon reading his Miranda rights "I mean, should I get an attorney" is not a sufficient request for counsel, but rather a request for legal advice.

{¶28} The conversation surrounding Appellant's second request is as follows:

Appellant:    "But can I request a lawyer at this point. I mean, I'm still…I'm going to answer your questions and stuff, but … I'm not really sure how that works", we find that Detective Meadows explained as follows:

Detective:    "Well, basically, here's how it works, Cody. If you want an attorney, I can't stand between me and you – between me asking you the questions ….

Appellant:    Right.

Detective:    --- and you wanting an attorney. Okay? Now that being said, if you want one, that is your right. …

Appellant:    Right.

Detective:    Okay, But if you decide that you want an attorney, then I won't be able to – we won't be able to talk about this. …

Appellant:    Okay

                      ***

Detective.    So, that is, you know, kind of where you have to make the decision where, you know, "Yeah, Detective Meadows, I want to tell you my side of the story."

                      ***

Appellant:    So after – after this is all done, I will eventually get to talk to the Prosecuting Attorney, the Prosecutor?

                      ***

Appellant:    I'm – I'm going to cooperate 100 percent. (Supp.T. at 19-25).

**{¶29}** Based on the foregoing, we do not find Appellant's statements were made in violation of *Miranda* or in violation of his constitutional rights. The trial court properly found Appellant waived his right to counsel and confessed to his actions. Further,

Appellant signed a waiver of his Miranda right. (Supp. T. at 20). We find the trial court did not err in denying Appellant's motion to suppress in this matter.

{¶30} Appellant's sole Assignment of Error is overruled.

{¶31} For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.


By: Wise, J.

Hoffman, P. J., and

Baldwin, J., concur.


JWW/d 0304