{¶ 1} Andre Peterson appeals from his conviction for burglary. He asserts error in the State's reference on cross-examination to his post-Miranda silence, and in the trial court's elicitation of testimony relating to his uncharged criminal conduct. We affirm.
 {¶ 2} On November 10, 2003, Markus Williams returned to his home on East 132nd Street in Cleveland to find the front door open. When he entered the home, it had been completely ransacked. He was missing several items, including his television, silverware, clothing and shoes.
 {¶ 3} Williams immediately called the Cleveland police. During the subsequent investigation, the police failed to find any signs of forced entry. They did, however, recover several fingerprints on items in the home but were unable to match the fingerprints to a suspect.
 {¶ 4} Two years after the incident, the Cleveland police Scientific Investigation Unit determined that a latent print found at Mr. Williams' home belonged to Andre Peterson. Detective Markus Saffo was assigned to investigate.
 {¶ 5} Detective Saffo contacted Peterson through a family member and left a message. Peterson then voluntarily returned the call. During the conversation, Detective Saffo advised Peterson of his Miranda rights and proceeded to question him about the burglary. Peterson denied being in Williams' home, but admitted that he knew about the burglary and had spoken to the victim about some of the stolen items.
 {¶ 6} This information, coupled with the fingerprint evidence, was presented to the grand jury. Peterson was indicted on one count of burglary, in violation of R.C. 2911.12, and one count of theft, in violation of R.C. 2913.02.
 {¶ 7} Following a bench trial, Peterson was found guilty of the lesser included offense of burglary and sentenced to one year of community control sanctions. Peterson appeals from this conviction and asserts the following assignments of error:
 "I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO QUESTION MR. PETERSON ABOUT HIS PRE-ARREST, POST-MIRANDA SILENCE.
 II. THE TRIAL COURT ERRED IN SUA SPONTE ELICITING TESTIMONY REGARDING MR. PETERSON'S UNCHARGED CRIMINAL CONDUCT."
 {¶ 8} Peterson first asserts that the prosecutor unlawfully elicited testimony concerning his pre-arrest, post-Miranda silence, and that the trial court erred in allowing this questioning.
 {¶ 9} In Ohio, appellate courts have declined to overturn convictions based upon a limited inquiry of a defendant's post-Miranda warning silence, where it does not constitute a "continuous and invading inquiry regarding defendant-appellant's post-Miranda silence." See State v.Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338, State v. Brown (May 1, 1991), Lorain App. Nos. 90CA004836 and 90 CA004838. As this matter was tried to the bench, it is presumed that in a bench trial in a criminal case, the court considers only the relevant material and competent evidence in arriving at its judgment unless the court affirmatively speaks to the contrary. State v. White (1968), 15 Ohio St.2d 146, 151.
 {¶ 10} Peterson cites the following exchange between the prosecutor and Detective Saffo:
 "Q: You did attempt to make personal contact with the defendant initially?
 A: Initially, correct?
 Q: And because you couldn't locate him at the address that you had for him, you left a card?
 A: That's correct.
 Q: And then the defendant called you, is that correct?
 A: Yes.
 Q: He was afforded an opportunity to come down and make a statement, which apparently he did not do?
 A: Correct." Tr. 100.
 {¶ 11} Peterson next references the following exchange during cross-examination to support his contention that Detective Saffo read Peterson his Miranda rights before Peterson declined to give a statement:
 "Q: Is that right? You didn't have — you didn't come up with this story when you talked with Detective Saffo, did you?
 [Defense counsel]: Objection.
 A: No, I didn't. No, I didn't.
 Q: You didn't have this explanation of how your fingerprints ended up on the jars and the entertainment center when you spoke with Detective Saffo, correct?
 A: Correct.
 Q: All right.
 A: He didn't ask me.
 Q: You did not afford yourself of the opportunity, when given to come down and make a written statement-
 A: He didn't tell me to come down. He didn't tell me to come down and make a written statement.
 Q: Did you ever contact Detective Saffo after the phone conversation —
 A: Um-hum.
 Q:— and say, "I have some important information to give you. I can tell you how my fingerprints ended up on those items"? Did you ever do that?
 A: No. He didn't want to talk to me.
 Q: You did not call him after that, correct?
 A: I called him.
 Q: You did not pick up the phone ever again and as to talk to him or provide a written statement, yes or no?
 A: No, I didn't. No I did not. He told me-
 Q: I don't have a question right now." Tr. 153-155.
 {¶ 12} The State, however, points out that counsel's questioning of Detective Saffo on redirect brought forth the following exchange:
 "Q: Now, the other thing is, why is he not coming to the station? Why aren't we recording what he's doing, why are we over the phone?
 A: A lot of times we talk to suspects over the phone and we get an opportunity to come into the station with an attorney. So a routine conversation with a defendant over the phone is, "If you'd like to give a statement, please feel free to contact me with your attorney." Tr. 96.
 {¶ 13} The State maintains that Peterson opened the door to further inquiry and clarification of the investigative process, and the questioning was not an effort to elicit testimony concerning Peterson's post-Miranda silence. We agree. A review of the record indicates that the cross-examination of Peterson was in response to the questions posed by Peterson's counsel on direct examination. Further, defense counsel failed to object to this line of questioning. Improper testimony or comment on post-Miranda silence is only subjected to plain or harmless error analysis when the defense counsel did not object to the prosecution's actions at trial. State v. Rogers (1987) 32 Ohio St.3d 70. See, also, State v. Motley, supra. The decision to correct a plain error is discretionary and should be made with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Stojetz, 84 Ohio St.3d 452, 455, 1999-Ohio-464.
 {¶ 14} The trial court heard testimony that the prints found in the home were Andre Peterson's. While Peterson attempted to explain his presence in the home, it is for the trial court to weigh the credibility of witnesses. Moreover, from this record, we cannot conclude that but for the previously referenced testimony, the outcome of the trial would have been otherwise. Therefore, we find no plain error.
 {¶ 15} Having found no indication that the attenuated reference to Peterson's post-Miranda silence influenced the decision of the trial court, and applying a harmless error standard of review, we cannot say that the trial court's allowance of this line of questioning was error.
 {¶ 16} This assignment of error lacks merit.
 {¶ 17} In his second assignment of error, Peterson claims error in the trial court's sua sponte elicitation of testimony regarding his uncharged criminal conduct in the form of driving under suspension. Since credibility of a witness may only be attached using prior criminal conduct if the crime is one of moral turpitude or if the offense was punishable by a sentence in excess of twelve months, Peterson argues that it was error to mention his conduct because driving under suspension does not meet these criteria. Peterson cites to the following testimony:
 "THE COURT: Wasn't your driver's license suspended?
 THE WITNESS: During that time — was it suspended during that time?
 THE COURT: I think I suspended it.
 THE WITNESS: Yes. I think you did suspend it. I went to —
 THE COURT: You should not have been driving.
 THE WITNESS: You're correct, your Honor."[1]
Tr. 162-163.
 {¶ 18} Peterson cites R.C. 2945.49 and Evid.R. 404(B) for the proposition that because these sections codify an exception, they must be strictly construed against admissibility. Evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Evid.R. 404(B); see, also, Evid.R. 404(A). Evidence showing bad character may, however, be admissible for other purposes, such as proof of motive, opportunity, preparation, plan, intent, knowledge, identity, or absence of mistake, or accident. Id.
 {¶ 19} Again, defense counsel lodged no objection to Peterson's statements and has therefore limited this court to a plain-error review of the testimony. Evid.R. 103(A)(1); State v. Mason, 82 Ohio St.3d 144,159, 1998-Ohio-370. A review of the record indicates that Peterson's statements about his license suspension was irrelevant to the charges at hand. Even assuming that the testimony was improper under Evid.R. 404(B), we find no plain error warranting reversal because the testimony was harmless beyond a reasonable doubt. Peterson's reference to a lack of driving privileges was isolated and of minor significance given the charges for which Peterson was being tried. See State v. Gillard (1988),40 Ohio St.3d 226, 233.
 {¶ 20} While we acknowledge that the admission of evidence of uncharged criminal conduct is carefully limited because of the substantial danger that a jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crimes charged in the indictment (see State v. Schaim, 65 Ohio St.3d 51,59, 1992-Ohio-31), this danger is limited when the matter is tried to the bench. In a bench trial, the trial court is presumed to rely only on relevant material and competent evidence in arriving at its judgment.State v. White, supra; see, also, State v. Richey, 64 Ohio St.3d 353,1992-Ohio-44.
 {¶ 21} Peterson was tried on one count of burglary and one count of theft. Any reference to his driving privileges was irrelevant to the charges and harmless error, particularly in light of the fact that the matter was tried to the bench.
 {¶ 22} For these reasons, Peterson's second assignment of error lacks merit.
 {¶ 23} The judgment of the trial court is affirmed. It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MELODY J. STEWART, J., CONCUR
[1] In case number CR-02-427493-ZA, Peterson pleaded guilty to one count of possession of drugs in violation of R.C. 2925.11, and one count of trafficking in drugs in violation of R.C. 2925.03. Because of his conviction on these charges, R.C. 2925.11(E)(2) mandates that his driver's license be suspended for a period of not less than six months. A review of the docket in CR-02-427493-ZA indicates that Peterson was sentenced by the same trial court judge as in the instant case. The judge, therefore, would have been aware of the nature of the prior offenses and the mandatory suspension of Peterson's license.