JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Johnny Moorer, appeals his theft conviction. We affirm.
 {¶ 2} A two-count indictment was returned against Moorer: count one charged burglary and count two charged theft. After waiving his right to a jury trial, the case proceeded to a bench trial. At the conclusion of the State's case, Moorer made a Crim. R. 29 motion for acquittal, which was denied. The defense rested without presenting evidence. The court found Moorer guilty of theft, but not guilty of burglary, and sentenced him to community control sanctions.
 {¶ 3} The trial testimony established that on December 4, 2006, Moorer worked for Central Parking Systems as a valet in the IMG Center parking garage in Cleveland. Donna King, also a Central Parking Systems employee, worked in the office located in the garage and had worked on December 4. On that day, she completed her routine of counting the money, which totaled $1200, from the special events parking from the prior evening. King bound the money with a rubber band, placed it in an unlocked drawer of her desk, and left the office to go to the restroom. When she returned from the restroom, the money was gone.
 {¶ 4} A surveillance camera in the parking garage showed King leaving the office, and shortly thereafter, Moorer entering the office. Moorer was in the *Page 4 
office for approximately 30 seconds. While in the office, Moorer disappeared from the camera's view for approximately 18 seconds.
 {¶ 5} While Moorer was still in the office, another employee, Deandre, went to the door of the office, but left without entering. Shortly thereafter, Deandre can be seen on the video with a man who was holding a briefcase and handed Deandre something. Deandre then went in the office for approximately five seconds, to the area where customers' keys were kept, and left. The man who was with Deandre remained outside the office. A few minutes later, Deandre returned driving a car, got out of the car, and the man who had been waiting got in the car. Finally, the video showed that as Moorer was leaving the office, he removed his right hand from inside the left side of his coat.
 {¶ 6} In his first assignment of error, Moorer contends that the evidence was insufficient to sustain the theft conviction. In his second assignment of error, he contends that the conviction was against the manifest weight of the evidence.
 {¶ 7} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *Page 5 
proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 8} While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52, 678 N.E.2d 541. When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence and consider the credibility of witnesses. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356. The court may reverse the judgment of conviction if it appears that the factfinder "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Id. at 388.
 {¶ 9} R.C. 2913.02, governing theft, provides:
 {¶ 10} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: *Page 6 
 {¶ 11} "(1) Without the consent of the owner or person authorized to give consent[.]"
 {¶ 12} Moorer contends that the evidence was insufficient and against the manifest weight because of the following: Deandre had also been in the office; no one saw Moorer take the money; the testimony established that there was a water fountain in the office from which he could have been getting a drink; and there was no forensic evidence (i.e., fingerprints) linking him to the crime. After careful review of the record, we find that the weight of the evidence supports the conviction. While it is true that Deandre was in the office, he was
 {¶ 13} in there for only approximately five seconds and was in the area where customers' keys were kept. Based on Deandre's interaction with the unidentified man, a reasonable inference could be made that Deandre was only in the office to get the man's keys in order to get his car.
 {¶ 14} In contrast, Moorer was in the office for approximately 30 seconds, 18 of which he could not be seen, and was not there for the purpose of retrieving a customer's keys. Further, as Moorer exited the office, he removed his right hand from inside the left breast area of his jacket. King was unequivocal that the money was in the office when she left to go to the restroom and was gone when she returned approximately five or six minutes later. The video showed that the only people who entered the office while King was gone were Moorer and Deandre. *Page 7 
 {¶ 15} In rendering its judgment, the court noted that it reviewed the video several times and found that "there's no way Deandre was the thief." Based on the evidence just recited, the court did not "`clearly [lose] its way and create[ ] such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins at 387, quoting Martin at 175.
 {¶ 16} Accordingly, Moorer's first and second assignments of error are overruled.
 {¶ 17} For his third and fourth assignments of error, Moorer contends that he was denied a fair trial due to prosecutorial misconduct in eliciting testimony and making argument about his post-Miranda silence. We disagree.
 {¶ 18} Ohio appellate courts have declined to overturn convictions based upon a limited inquiry of a defendant's post-Miranda warning silence where it does not constitute a "`continuous and invading inquiry regarding defendant-appellant's post-Miranda silence.'" State v.Peterson, Cuyahoga App. No. 87909, 2007-Ohio-543, ¶ 9, quoting State v.Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338 and State v. Brown (May 1, 1991), Lorain App. Nos. 90CA004836 and 90 CA004838.
 {¶ 19} In Peterson, as here, the case was tried to the court. This court noted that in such a trial, "it is presumed that *** the court considers only the relevant material and competent evidence in arriving at its judgment unless the *Page 8 
court affirmatively speaks to the contrary." Peterson at ¶ 9, citingState v. White (1968), 15 Ohio St.2d 146, 151, 239 N.E.2d 65.
 {¶ 20} Moreover, "[i]mproper testimony or comment onpost-Miranda silence is only subjected to plain or harmless error analysis when the defense counsel did not object to the prosecution's actions at trial." Peterson at ¶ 13, citing State v. Rogers (1987),32 Ohio St.3d 70, 512 N.E.2d 581 and State v. Motley (Mar. 14, 1985), Franklin App. No. 84AP-923. "The decision to correct a plain error is discretionary and should be made with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Peterson at id., citing State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. "`An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise.'" Peterson at id., quoting State v. Stojetz, 84 Ohio St.3d 452, 455, 1999-Ohio-464,705 N.E.2d 329.
 {¶ 21} Here, defense counsel did not object to the testimony or argument Moorer now challenges. Moorer complains that questioning that occurred during the State's direct examination of the two police officers who testified was improper. Specifically, the arresting police officer testified that when he arrived at Moorer's home, Moorer was "compliant," "relaxed," and "there was no anger or any-he didn't question us about anything." The officer then described that *Page 9 
Moorer was placed under arrest, advised of his rights, and chose not to speak with the police.
 {¶ 22} The assistant prosecuting attorney reiterated the officer's testimony during argument on the Crim. R. 29 motion:
 {¶ 23} "You also heard from our Officer Malobabic about when he went to go arrest Johnny, there was no surprise on his part, he wasn't shocked, he wasn't saying: what are you doing here? Get out of here. He complied and was taken away. That would be contrary to most people's reactions to when the police come arrest you. Why are you taking me away? Where are you taking me? I didn't do anything. That's not what happened here. Johnny was silent."
 {¶ 24} Moorer also complains about the State's questioning of the investigating detective as to whether he had the opportunity to interview him. The detective responded: "[n]o. *** I think I went to the 6th floor jail and asked to go back to see if he wanted to talk to me and he refused."
 {¶ 25} Although both the officer's and detective's testimony, as well as the State's argument during closing argument, implicated Moorer'spost-Miranda silence, we do not find that, but for the testimony or the State's argument, the outcome of the trial would have been any different. As already mentioned, not only was the testimony and argument not objected to, but this was a trial before the court, where the court is presumed to have considered only the relevant material and competent evidence. The record indeed reflects that the court did *Page 10 
consider only the relevant material and competent evidence in reaching its judgment.
 {¶ 26} Moorer also complains that the State's argument that, upon being arrested, he did not state "I was just getting a drink of water," was an improper comment on his post-arrest silence. During defense counsel's cross-examination of one of the State's witnesses (the security officer who monitored the IMG Building) though, he questioned the witness on three different occasions whether it was possible that Moorer was in the office getting a drink of water. Thus, the State's argument that Moorer never stated that he was getting a drink of water was in rebuttal to Moorer's defense.
 {¶ 27} Accordingly, the third and fourth assignments of error are overruled. Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
 KENNETH A. ROCCO, P.J., and ANN DYKE, J., CONCUR. *Page 1