**The STATE of Ohio, Appellee,**

v.

**BUTLER, Appellant.**

[Cite as *State v. Butler*, 192 Ohio App.3d 623, 2011-Ohio-1233.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94743.

Decided March 17, 2011.

William D. Mason, Cuyahoga County Prosecuting Attorney, and John P. Colan, Assistant Prosecuting Attorney, for appellee.

Robert L. Tobik, Cuyahoga County Chief Public Defender, and Cullen Sweeney, Assistant Public Defender, for appellant.

---

MARY EILEEN KILBANE, Administrative Judge.

{¶ 1} Defendant-appellant, Willie Butler, appeals his convictions and sentence. After review, we affirm his convictions, but remand the case for a limited hearing on court costs.

{¶ 2} In October 2009, Butler was charged in a six-count indictment. Counts 1 and 2 charged him with aggravated burglary, Counts 3 and 4 charged aggravated robbery, and Counts 5 and 6 charged him with kidnapping.[1] The matter proceeded to a jury trial, at which he was found guilty of all charges as an aider and abettor. The trial court sentenced him to five years on each of Counts 1 and 2, to be served concurrently with each other, five years on each of Counts 3 and 4, to be served concurrently with each other, and five years on each of Counts 5 and 6, to be served concurrently with each other. The court ordered that the counts run concurrently with each other and consecutively to Counts 1 and 3. The trial court also sentenced Butler to three years in prison on the firearm specification on each count, to be served prior to and consecutively to each of Counts 1 through 6, for an aggregate of 18 years in prison.[2]

{¶ 3} The following evidence was adduced at trial.

{¶ 4} On October 3, 2009, Gilbert Hart and Gerald Jones were refurbishing a house in Lakewood, Ohio owned by John Allen. Hart and Jones were working in the bathroom upstairs when three men entered the bathroom and ordered Jones by gunpoint to bind Hart's wrists and ankles with duct tape. One of the assailants then restrained Jones in the same manner. The men told Hart and Jones that they were "bounty hunters" looking for Allen. Apparently, Allen had recently won $3,500 in an illegal craps game with the bounty hunters. Hart told the bounty hunters that Allen had left for the day. They ordered Hart at gunpoint to call Allen and request more supplies. Allen responded that he was on the other side of town and that he would be there later.

---

1. Each count carried a one- and three-year firearm specification.

2. The court ordered that all one- and three-year firearm specifications be served concurrently.

{¶ 5} The bounty hunters then questioned Jones for Allen's home address. Jones responded that he did not know where Allen lived. While the victims were restrained, the bounty hunters took $4 from Jones and $80 from Hart. During this ordeal, the bounty hunters spoke with someone on their cell phones. Hart testified that he did not see who was outside, but his impression was that there was someone outside the house acting as a lookout because the bounty hunters talked to the lookout on their cell phone and got upset when he did not tell them that the neighbors came home.

{¶ 6} Hart testified that the bounty hunters told the person outside, who was later determined to be Butler, to go to the local convenience store for snacks, drinks, papers to smoke marijuana, and duct tape. The surveillance video from the convenience store revealed that an African–American male exited a white van and entered the store. This male wore a tan baseball cap and a jacket, shirt, pants, and shoes all dark in color. From what could be observed from the video, the male purchased potato chips and a drink. The tan hat worn by the male in the surveillance video was similar to a tan hat found in Hart's vehicle when Butler was arrested. The DNA on this hat matched Butler's DNA. Furthermore, the shirt worn by the male in the video appeared to have some sort of white coloring on the front. When Butler was arrested, he was wearing a black shirt with a white design that was very similar to the design observed on the shirt worn by the man in the video.

{¶ 7} The bounty hunters then had Hart call Allen again. Allen responded that he was busy and that he would be there shortly. At one point, the bounty hunters took Hart and Jones to the basement and made Hart call Allen for a third time. Allen said that he was home and that he was not coming to the Lakewood property. After being in the basement for approximately an hour and a half, Jones told the bounty hunters that Allen lived in Lorain. The bounty hunters left Hart in the basement and put Jones in Hart's car. Jones testified that there were three other men in the car with him, and his hands and feet were bound with duct tape while he was in the car.

{¶ 8} During the drive to Allen's house, the bounty hunters were on their cell phones, a circumstance that gave Jones the impression that there was another car following them. When they arrived at Allen's house, Jones was ordered to lie down in the back seat. Approximately ten minutes later, Butler got into the driver's seat of Hart's car, with Jones bound and lying down in the back seat. They did not speak, but Jones heard Butler's cell phone vibrate as if he were receiving calls.[3] The police arrived shortly thereafter and found Butler sitting in the driver's seat and Jones bound in the back seat of Hart's car.

---

3. Approximately 30 minutes after the bounty hunters left with Jones, Hart managed to free himself and call the Lakewood police, who notified the Lorain Police Department that the men had left for Allen's house.

{¶ 9} Butler now appeals, raising nine assignments of error for review, which shall be discussed together and out of order where appropriate.

Assignment of Error One

Butler's convictions are not supported [by] legally sufficient evidence as required by state and federal due process.

Assignment of Error Four

Butler's burglary convictions are not supported [by] legally sufficient evidence as required by state and federal due process.

{¶ 10} The Ohio Supreme Court has explained the standard for sufficiency of the evidence in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113:

Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1977), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 11} In the instant case, Butler was convicted of aggravated burglary under R.C. 2911.11(A)(2), aggravated robbery under 2911.01(A)(1), and kidnapping under 2905.01(A)(2). R.C. 2911.11(A)(2) provides, "No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon * * * on or about the offender's person or under the offender's control."

{¶ 12} R.C. 2911.01(A)(1) provides, "No person, in attempting or committing a theft offense,* * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" R.C. 2905.01(A)(2) provides, "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter[.]"

{¶ 13} Butler argues that the evidence was legally insufficient to find that he participated in these crimes. He claims that his mere presence at the scene is

not sufficient to prove that he aided and abetted the bounty hunters when they burglarized the Lakewood property and kidnapped and robbed Jones and Hart.

{¶ 14} Ohio's complicity statute, R.C. 2923.03(A)(2), provides, "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Id. A person aids or abets in a crime when the evidence demonstrates that "the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Criminal intent " 'may be inferred from [the] presence, companionship and conduct [of the defendant] before and after the offense is committed.' " Id. at 245, 754 N.E.2d 796, quoting *State v. Pruett* (1971), 28 Ohio App.2d 29, 57 O.O.2d 38, 273 N.E.2d 884.

{¶ 15} "[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 23 O.O.3d 265, 431 N.E.2d 1025. However, aiding and abetting may be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 3 OBR 163, 444 N.E.2d 68. "Evidence of aiding and abetting another in the commission of crime may be demonstrated by both direct and circumstantial evidence." Id.

{¶ 16} We find that the evidence in the instant case implicates Butler in the commission of these crimes beyond his mere presence at the scene and later in Hart's car. Hart testified that three men unexpectedly entered the upstairs bathroom while he and Jones were working. Once the assailants were in the bathroom, they ordered Jones at gunpoint to bind Hart's wrists and ankles with duct tape. One of the assailants then restrained Jones's wrists and ankles in the same manner. The men told Hart and Jones that they were "bounty hunters" looking for Allen.

{¶ 17} A further review of the record indicates that the bounty hunters also took $4 from Jones and $80 from Hart and sent Butler to the local convenience store to pick up supplies. Hart testified that he did not see who was outside, but believed that someone was outside acting as a lookout because the bounty hunters talked to someone on their cell phones, and they got upset when the lookout did not tell them that the neighbors came home.

{¶ 18} The surveillance video from the convenience store revealed that an African–American male exited a white van and entered the store. This male wore a tan baseball cap and a jacket, shirt, pants, and shoes, all dark in color. From what could be observed from the video, the male purchased potato chips

and a drink. The tan hat worn by the male in the surveillance video was similar to a tan hat found in Hart's vehicle when Butler was arrested. The DNA on this hat matched Butler's DNA. Furthermore, the shirt worn by the male in the video appeared to have some sort of white coloring on the front. When Butler was arrested, he was wearing a black shirt with a white design that was very similar to the design observed in the video.

{¶ 19} The bounty hunters also took Hart and Jones to the basement for approximately an hour and a half, at which point Jones told the bounty hunters that Allen lived in Lorain. The bounty hunters then put Jones in Hart's car. Jones testified that his hands and feet were bound with duct tape and that the men put him in the back seat of Hart's car. During the drive to Allen's house, the bounty hunters were on their cell phones, so Jones had the impression that there was another car following them.

{¶ 20} When they arrived at Allen's house, Jones was ordered to lie down in the back seat. Approximately ten minutes later, Butler got into the driver's seat of Hart's car, with Jones lying down and bound in the back seat. They did not speak, but Jones heard Butler's cell phone vibrate as if he were receiving calls. The police arrived shortly thereafter and found Butler sitting in the driver's seat and Jones bound in the back seat of Hart's car.

{¶ 21} The police found potato chip bags in Hart's car similar to the potato chip bags purchased at the convenience store, which was captured on the store video. The police also found a vehicle stolen from Cleveland in close proximity to Hart's car. Furthermore, three days later, Lakewood police observed a white van registered to Butler parked approximately 16 houses away from Allen's Lakewood property.

{¶ 22} Butler further argues that the evidence was legally insufficient to convict him of aggravated burglary because the state failed to prove that the trespass into the Lakewood property occurred by "force, stealth, or deception," as required by R.C. 2911.11(A)(2). He claims that there was insufficient evidence regarding how the bounty hunters had entered the Lakewood property because Jones and Hart did not witness the entry and there was no physical evidence of a forced entry.

{¶ 23} Although there was no direct testimony as to how the men gained entry into the house, circumstantial evidence supports the inference that they gained entrance by stealth. "Stealth" has been defined as " 'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.' " *State v. Sims*, Cuyahoga App. No. 84090, 2005-Ohio-1978, 2005 WL 984499, ¶ 5, fn. 3, quoting *State v. Ward* (1993), 85 Ohio App.3d 537, 540, 620 N.E.2d 168; see also *State v. Gibbs*, Cuyahoga App. No. 94349, 2011-Ohio-76, 2011 WL 198467.

{¶ 24} Here, Hart testified that the men sneaked upstairs. He believed that the front door was locked, but other workers must have left the back door unlocked. The bounty hunters did not announce their presence in the home. As a result, Hart and Jones were shocked to see them because they had thought that the doors were locked. Based on this evidence, we find a nexus between the surprise of Hart and Jones upon seeing the men in the bathroom and the manner and means by which they gained entrance. Thus, we can infer that the bounty hunters entered the house by stealth. "Because circumstantial evidence is given the same weight as direct evidence, sufficient evidence was presented that * * * the [burglaries were committed] with stealth." *State v. Williams*, Cuyahoga App. No. 92668, 2009-Ohio-6826, 2009 WL 4986108, ¶ 12, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. See also *State v. Pickens*, Crawford App. No. 3-07-30, 2008-Ohio-1140, 2008 WL 697110, ¶ 19 (the Third District Court of Appeals found sufficient evidence to meet the definition of "force, stealth, or deception" when the defendant "entered through an unlocked door during the morning hours of January 20, 2007 [and] did not knock before entering * * * to alert [the victim] to his presence in the home").

{¶ 25} Based on these facts, when viewing them in a light most favorable to the state, a rational trier of fact could find that the state presented evidence that established the essential elements of aggravated burglary, aggravated robbery, and kidnapping.

{¶ 26} Accordingly, the first and fourth assignments of error are overruled.

Assignment of Error Five

The trial court committed plain error when it instructed the jury that finding an open door and entering it can constitute trespass by "stealth."

{¶ 27} Butler argues that his aggravated-burglary convictions were a direct result of an erroneous instruction by the trial court regarding a jury question.

{¶ 28} In the instant case, the trial court instructed the jury that to convict Butler of aggravated burglary, it "must find beyond a reasonable doubt that * * * [Butler] * * * by force, stealth or deception, trespassed in an occupied structure * * * when another person other than the accomplice of the offender is present with purpose to commit * * * in the structure * * * any criminal offense. In this case you're using an aggravated burglary." The trial court defined stealth as "any secret or sly act to gain entrance."

{¶ 29} During deliberations, the jury asked the trial court, "Does finding an open door and entering it constitute a secret or sly act?" The trial court responded, "Entering an occupied residence without permission of the owner or

occupant can be a stealthful entry in an * * * aggravated burglary, but all the other elements must also be met."

{¶ 30} We note that trial counsel did not object to the trial court's answer, so we review for plain error. To prevail on a claim of plain error, Butler must demonstrate that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph two of the syllabus; see also Crim.R. 52(B).

{¶ 31} Butler contends that the trial court should have instructed the jury that finding an open door and entering it during daytime does not constitute trespass by stealth. However, the trial court's instruction was not erroneous, as "stealth" has been defined to include " 'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.' " *Sims*, 2005-Ohio-1978, 2005 WL 984499, ¶ 5, fn. 3, quoting *Ward*, 85 Ohio App.3d at 540, 620 N.E.2d 168. Moreover, Butler has failed to demonstrate how the outcome of the trial clearly would have been different.

{¶ 32} Thus, the fifth assignment of error is overruled.

Assignment of Error Six

Butler was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his attorney failed to object to an erroneous instruction on the "stealth" element of aggravated burglary.

{¶ 33} In order to substantiate a claim for ineffective assistance of counsel, Butler must demonstrate "(a) deficient performance ('errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment') and (b) prejudice ('errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable'). *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Accord State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373." *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 30.

{¶ 34} In Ohio, a properly licensed attorney is presumed competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164. In evaluating whether a petitioner has been denied the effective assistance of counsel, the Ohio Supreme Court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d

495, 358 N.E.2d 623; *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905. To demonstrate that a defendant has been prejudiced, the defendant must prove "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.

{¶ 35} Butler argues that trial counsel was ineffective for failing to object to the trial court's response to the jury's "stealth question." However, having found that the instruction was proper, we conclude that Butler has failed to demonstrate how the result of the trial would have been different.

{¶ 36} Therefore, the sixth assignment of error is overruled.

Assignment of Error Two

Butler's Fifth [and] Fourteenth Amendment rights were violated when the trial court erroneously permitted the prosecutor to elicit testimony on Butler's pre-trial silence.

{¶ 37} In the instant case, the state asked Lakewood Police Officer Joshua Greer about Butler's demeanor while he was in police custody. Greer replied, "Kind of emotionless, didn't say anything. Wasn't—didn't appear to be upset, didn't appear to be worried." The state then asked, "Now, at this point, do you instruct [Butler] on his *Miranda* warnings?" Greer replied, "It wasn't immediately at that point but a short time later, yes."

{¶ 38} Butler claims that his constitutional rights were violated when the state elicited testimony regarding his post-*Miranda* silence because there was no direct evidence of his involvement in any criminal activity.

{¶ 39} In *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, at syllabus, the Ohio Supreme Court held that the state's "[u]se of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." Id. at syllabus. However, this court has declined to overturn convictions based upon a limited inquiry of a defendant's post-*Miranda* warning silence, where it does not constitute a "continuous and invading inquiry regarding defendant-appellant's post-*Miranda* silence." *State v. Dixon* (Mar. 13, 1997), Cuyahoga App. No. 68338, 1997 WL 113756, citing *Greer v. Miller* (1987), 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618; see also *State v. Peterson*, Cuyahoga App. No. 87909, 2007-Ohio-543, 2007 WL 416932.

{¶ 40} Here, the state questioned Greer about Butler's demeanor when he first came into the custody of Lakewood police. Greer testified that Butler was not advised of his Miranda rights until after his initial observation. Thus, there is no

indication that the state attempted to use Butler's invocation of his Fifth Amendment right against him.

{¶ 41} Accordingly, the second assignment of error is overruled.

Assignment of Error Three

The trial court denied [Butler] a fair trial and misapplied evidentiary rules on expert testimony when it permitted a police officer to opine, based on his "years of experience," that [Butler] had the look of someone "caught in the commission" of a crime.

{¶ 42} In the instant case, the state asked Lorain Police Sergeant Edward Super whether he made any observations as to Butler's reaction when he was taken into custody. Super testified that Butler looked "like he had resigned himself that he was caught." He further testified:

He just, in my years of experience where I see people when * * * [o]ften times when you find people and they're caught in the commission of their acts, when they realize that there is no chance for them to escape or get away, they kind of have that, just where they've surrendered. They know they can't run, they know they can't hide, it's over. That was the * * * impression I got from [Butler].

{¶ 43} Butler argues that the trial court improperly allowed Super to testify as an expert that he [Butler] had the look of someone caught in the commission of a crime. He claims that Super's testimony may have influenced the jury because there was insufficient evidence to support the state's theory that he was an integral part of the criminal scheme.

{¶ 44} In *State v. Potter*, Cuyahoga App. No. 81037, 2003-Ohio-1338, 2003 WL 1355230, ¶ 38, this court has previously held:

[T]he opinion of a witness as to whether another witness is being truthful is inadmissible. *State v. Miller* (Jan. 26, 2001), Montgomery App. No. 18102 [2001 WL 62793] In our system of justice, it is the fact finder, not the witness, who bears the burden of assessing the credibility and veracity of the witnesses. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. Moreover, jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their perceived experiences with other cases. [*Miller*.] However, in determining whether an error was prejudicial or harmless, a reviewing court must first read the entire record, disregarding the objectionable material. If there is overwhelming evidence of the appellant's guilt, aside from the disputed material, then it must hold that the error is not prejudicial but is harmless beyond a reasonable doubt and affirm the trial court's judgment. Crim.R. 52, *Chapman v. California* (1967), 386 U.S. 18, [87 S.Ct. 824, 17 L.Ed.2d 705]; [s]ee *State v. Davis* (1975),

44 Ohio App.2d 335 [73 O.O.2d 395], 338 N.E.2d 793; *State v. Dunaway* (Oct. 31, 1996), Cuyahoga App. No. 69561 [1996 WL 631091].

{¶ 45} Here, Super essentially testified to his opinion concerning Butler's guilt. He testified that based on his years of experience, Butler's actions gave him the impression that he got caught in the commission of a crime. Because jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their experience, Super's testimony, in effect, declared that Butler was guilty.

 {¶ 46} Nevertheless, we cannot conclude that this error warrants a reversal of the jury's verdict. In reviewing the record and disregarding this objectionable testimony, we find overwhelming evidence of Butler's guilt. Thus, the admission of Super's testimony was "harmless beyond a reasonable doubt."

{¶ 47} Accordingly, the third assignment of error is overruled.

Assignment of Error Seven

[Butler's] sentence is contrary to law and violated due process because the trial court failed to consider whether the sentence was consistent with the sentences imposed for similar crimes committed by similar offenders and because an eighteen-year sentence for a first time offender is inconsistent with such sentences.

Assignment of Error Eight

[Butler's] consecutive sentences are contrary to law and violative of due process because the trial court failed to make and articulate the findings and reasons necessary to justify it.

 {¶ 48} The Ohio Supreme Court set forth the applicable standard of appellate review for felony sentences in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4:

In applying [*State v.*] *Foster* [109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470] to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. *If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.*[4]

(Emphasis added.)

{¶ 49} Butler argues that his sentence is contrary to law and violates due process because the trial court imposed consecutive sentences without making the

---

4. We recognize that *Kalish* is merely persuasive and not necessarily controlling because it has no majority. The Supreme Court split over whether we review sentences under an abuse-of-discretion standard in some instances.

requisite findings required by R.C. 2929.14(E)(4) and 2929.41(A). However, Ohio courts have not been required to make these statutory findings since they were severed from Ohio's sentencing statutes in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.[5]

{¶ 50} Here, Butler's 18 years is within the permissible statutory range for his convictions. In the sentencing journal entry, the trial court acknowledged that it had considered all factors of law and found that prison was consistent with the purposes of R.C. 2929.11. Thus, we cannot conclude that his sentence is contrary to law, and we now consider whether it constituted an abuse of discretion. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 51} A review of the record reveals that the trial court considered the facts of the case. The court noted that the victims were brutally attacked and robbed while they were at work. The attack on Jones and Hart lasted for more than eight hours. The bounty hunters then took Jones with them to locate Allen's home. Butler also made a statement at sentencing. He stated that he exercised bad judgment for the first time in his life. He admitted being at the convenience store. He also admitted bringing marijuana to the Lakewood property to sell to the bounty hunters. He further stated that he served as a lookout and was going to drive the car wherever the bounty hunters needed him to drive.

{¶ 52} Based on the foregoing, we cannot say that the trial court abused its discretion by imposing consecutive sentences.

{¶ 53} Butler also argues that the trial court erred when it sentenced him to 18 years in prison. He claims that the sentencing hearing was fundamentally flawed because the trial court failed to consider the consistency and proportionality of his sentence with sentences imposed on similar offenders.

{¶ 54} However, this court has previously held that in order to support a claim that a "sentence is disproportionate to sentences imposed upon other offenders, a

---

5. Butler relies on the United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, arguing that *Ice* demonstrates that Ohio's consecutive-sentencing statutes do not violate the Sixth Amendment. However, in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, the Ohio Supreme Court recently addressed this argument and determined that *Ice* does not revive these sentencing statutes and that "[t]rial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." Id. at paragraphs two and three of the syllabus.

defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." *State v. Edwards,* Cuyahoga App. No. 89181, 2007-Ohio-6068, 2007 WL 3377209, ¶ 11. See also *State v. Redding,* Cuyahoga App. No. 90864, 2008-Ohio-5739, 2008 WL 4812477.

{¶ 55} In the instant case, defense counsel argued that Butler should be treated more leniently in light of his age and participation in the crime, but he failed to raise the argument that Butler's sentence was disproportionate to sentences given to other offenders with similar records who have committed the same offense. Furthermore, Butler failed to "present evidence as to what a 'proportionate sentence' might be." Id. Therefore, he has not preserved the issue for appeal.

{¶ 56} Accordingly, the seventh and eighth assignments of error are overruled.

Assignment of Error Nine

The trial court erred and deprived [Butler] of his property without due process of law and his rights under the Sixth Amendment when it imposed costs outside his presence.

{¶ 57} Butler argues that the trial court erred when it imposed court costs in the sentencing journal entry without first addressing court costs at his sentencing hearing. We agree.

{¶ 58} R.C. 2947.23(A)(1) provides, "In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." Thus, under R.C. 2947.23, a trial court is required to assess costs against all criminal defendants, and to do so even if the defendant is indigent. *State v. White,* 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 14. Waiver of the payment of such costs is permitted, but not required, if the defendant is indigent. Id. at ¶ 8, 14; see also R.C. 2949.092.

{¶ 59} In *State v. Joseph,* 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22, the Ohio Supreme Court held that it is reversible error for the trial court to impose costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. The court found that the trial court's error did not void the defendant's sentence, but held that the defendant had been harmed because the trial court's failure to mention court costs during resentencing denied him the opportunity to claim indigency and seek waiver of the payment of the costs. Id. Therefore, the court remanded the matter to the trial court to allow the defendant to move the court for a waiver of the payment of court costs. Id. at ¶ 23.

{¶ 60} In the instant case, a review of the record reveals that the trial court failed to impose court costs during Butler's sentencing. Thus, we find that the court erred when it imposed costs in the sentencing entry without first imposing them at the sentencing hearing. As a result, we reverse the trial court's judgment only in the respect that it failed to address costs, and we remand the case to the trial court for a limited hearing on court costs, at which Butler could move the court for a waiver of the payment of court costs. Id.; see also *State v. Eskridge*, Cuyahoga App. No. 88581, 2007-Ohio-2766, 2007 WL 1643199, ¶ 6.

{¶ 61} Therefore, Butler's ninth assignment of error is sustained.

{¶ 62} Accordingly, the judgment is affirmed, and the case is remanded to the trial court for a limited hearing on court costs.

Judgment affirmed
and cause remanded.

JONES and ROCCO, JJ., concur.